

Trevor D. Large (SBN: 214886)
Christopher M. de la Vega (SBN: 276391)
**FAUVER, LARGE, ARCHBALD & SPRAY, LLP**
820 State Street, 4th Floor
Santa Barbara, CA 93101
Tel: (805) 966-7000
Fax: (805) 966-7227
tlarge@flasllp.com
cdelavega@flasllp.com

Attorneys for Plaintiff
Scott Wood

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SCOTT WOOD, an individual, | **Case No.:** 2:20-CV-10865 |
| Plaintiff, | |
| v. | **SECOND AMENDED COMPLAINT FOR:** |
| NEWBRIDGE RESOURCES GROUP, LLC, a Delaware limited liability company; ALSHAIR FIYAZ, an individual; OSCAR CROHN, and individual; KLAUS HASBO, an individual; JOHN CRESPO, an individual; PACIFIC COAST ENERGY COMPANY LP and, DOES 1 through 25, inclusive, | 1. **BREACH OF CONTRACT;**<br>2. **BREACH OF CONTRACT;**<br>3. **DECLARATORY RELIEF;**<br>4. **FRAUD – INTENTIONAL MISREPRESENTATION;**<br>5. **MISAPPROPRIATION OF TRADE SECRETS;**<br>6. **UNFAIR COMPETITION;**<br>7. **BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING;**<br>8. **CONVERSION** |
| Defendants. | Trial Date:   None Set |

Individual plaintiff Scott Wood ("Plaintiff" or "Wood"), on information and belief, alleges against Defendants NEWBRIDGE RESOURCES GROUP, LLC ("NewBridge"), ALSHAIR FIYAZ ("Fiyaz"), OSCAR CROHN ("Crohn"), KLAUS HASBO ("Hasbo"), JOHN CRESPO ("Crespo"), PACIFIC COAST ENERGY COMPANY LP ("PCEC") and Does 1-25 (Collectively "Defendants") the following:

# I. PARTIES

1. Plaintiff Wood resides in Santa Barbara County, California. Further, Wood entered into an employment agreement with Defendant NewBridge with a jurisdiction and venue clause in Santa Barbara, California. A true and correct copy of that Employment Agreement ("EA") is attached hereto as Exhibit "A."

2. Defendant NewBridge is a Delaware limited liability company. NewBridge owns significant oil and gas assets in Santa Barbara County, California. NewBridge also entered into the EA with Wood that required jurisdiction and venue in Santa Barbara County, California. NewBridge was and/or is authorized to do business in the State of California and regularly conducts business within Santa Barbara County.

3. Defendant Fiyaz is an individual whose place of residence is unknown to Plaintiff at this time. However, Fiyaz regularly conducts business in the State of California and Fiyaz was one of the individuals that induced Wood to enter into the EA.

4. Defendant Crohn is an individual whose place of residence is unknown to Plaintiff at this time. However, Crohn controlled operations of NewBridge, regularly conducts business in the State of California and was part of the group of individuals who induced Wood to enter into the EA.

5. Defendant Hasbo is an individual whose place of residence is unknown to Plaintiff at this time. However, Hasbo controlled the operations as Board President of NewBridge, regularly conducts business in the State of California and also acted as the de-facto CEO of NewBridge. Hasbo was also one of the individuals involved in inducing Wood to enter into the EA.

6. Defendant Crespo is a resident of Houston, Texas. He is a board member of NewBridge and acted as their general counsel while conducting business in the State of California. He was one of the individuals involved in inducing Wood to enter

into the EA. He is also the manager of K-4 Oil, LLC, fifty percent (50%) owner of NewBridge.

7. Defendant PCEC is a limited partnership whose headquarters are in Los Angeles, California and manages extensive oil fields in Santa Barbara County, California and other locations in California.

8. Plaintiff is informed and believes that each Defendant, including Does 1-25, whether actually or fictitiously were acting as the principal, agent or employee of each other Defendant, and in acting as such principal, agent or within the scope of such employment or agency took some part in the acts or omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein. At all times relevant herein Defendants, and each of them, ratified the unlawful conduct of the other Defendants, their agents and/or employees by failing to repudiate the misconduct and by accepting the benefits of the transaction with knowledge of the wrongdoing.

9. Defendants Does 1-25, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff at this time. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities. Plaintiff alleges on information and belief that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged herein and that Plaintiff's injuries and damages alleged herein were proximately caused by such Defendants.

## II.   JURISDICTION AND VENUE

10. Section 11(a) of the EA states that "[w]ith respect to any claim or dispute related to or arising under this Agreement, the parties hereby consent to the exclusive jurisdiction, forum and venue of the state and federal courts (as applicable) located in Santa Barbara County, California." Further, Defendants regularly do business in California, own property in the State of California (and the County of Santa Barbara) and have employed and do employ individuals within the State of California and the

County of Santa Barbara. Defendants have obtained the benefits of the laws of the State of California and the California labor market. Many of the acts, as well as the course of conduct alleged herein, occurred within this County. As herein alleged, Plaintiff has been harmed in an amount to be proven at the time of trial, but in excess of One Million Dollars ($1,000,000.00).

### III. GENERAL ALLEGATIONS

11. Plaintiff Wood has been involved with the oil and gas business for most of his working life. Over the course of his career, he has owned and operated several companies and oil and gas fields. A significant number of these fields have been in Santa Barbara County, California. Prior to meeting the Defendants, Wood had carefully cultivated numerous oil and gas business and development opportunities.

12. After learning about this background, and specifically the projects that Wood had cultivated, in or about August 2018, Defendant Fiyaz approached Wood about the idea of investing in Wood's projects and jointly creating an oil and gas company. Fiyaz claimed that his financial backing, combined with Wood's assets and industry knowledge could create a successful company.

13. In August of 2018, Wood met with Fiyaz at Fiyaz' yacht club. During that meeting, Fiyaz promised to Wood that he would have at least One Hundred Million Dollars ($100,000,000.00) to invest in a potential oil and gas company; and would grow the company to over One Billion Dollars. Fiyaz made the same claim to Wood when they met at Fiyaz' polo club in approximately the end of August or early September 2018. Fiyaz also introduced Crohn and Hasbo to Wood during roughly the same time period. Both had prior relationships with Fiyaz and were agents of Fiyaz.

14. At the time of these discussions, Wood already had in place a company, NewBridge Resources, LLC, a Texas limited liability company. As discussions continued through the remaining months of 2018 and into 2019 it was agreed between Wood, Crohn, Fiyaz and Hasbo that a new entity would be created using the existing

assets of NewBridge Resources, LLC (that had been purchased and acquired by Wood) and additional funding from Fiyaz.

15. Once formed, one of the key assets NewBridge was to acquire was Pacific Coast Energy Company, LP ("PCEC"). The potential acquisition of PCEC was information that was the intellectual property of Wood and was shared with the Defendants as part of the creation of NewBridge.

16. Similarly, Wood provided Defendants, and each of them, information about other potential deals that he had access to but were unknown to Defendants or the public at large. Examples of those deals include, but are not limited to, Amplify Energy Corp. ("Amplify") and HVI Cat Canyon, Inc. aka "Greka" ("HVI Cat Canyon"). These are identified in more detail in the business plan attached to NewBridge's Operating Agreement, as Exhibit A ("Business Plan"). These business opportunities and the plans related thereto were the proprietary information of Wood and shared with Defendants based upon the promises made to Wood by Defendants. Wood had cultivated these opportunities for years prior to meeting Defendants.

17. Over the course of further discussion, and prior to the formation of NewBridge, throughout late 2018 and through 2019 Defendants Crohn, Hasbo, and Fiyaz repeatedly informed Wood via multiple in-person meetings, telephone calls and e-mail that he would be Chief Executive Officer of NewBridge, once formed. Further, Defendants Crohn, Hasbo and Fiyaz informed Wood via multiple in-person meetings, telephone calls and e-mails that he would have control over the day-to-day operations of the future NewBridge. In an e-mail from Crohn, dated April 18, 2019, Crohn stated to Wood "we are investing on the basis you are going to manage this investment." Based on those promises and discussions, Wood continued to provide his proprietary information to Defendants.

18. Ultimately, the non-PCEC Defendants decided to initially pursue the purchase of PCEC. In order to achieve that acquisition the individual Defendants engaged in negotiations about the funding for PCEC. However, in approximately the

last week of August 2019, Fiyaz told Wood over the phone, while Hasbo listened from Wood's office, that they had $4 Million less than previously promised would be available for the closing transaction. This caused Wood to have to attempt to renegotiate the PCEC deal at the last minute due to the failed promises from Fiyaz, Crohn and Hasbo. It was at this time that Fiyaz told Wood that if the PCEC deal didn't close, Fiyaz "would take everything from" Wood, including NewBridge Resources. The threat of taking all of Wood's intellectual property and assets continued until the formation of NewBridge and acquisition of PCEC, and Wood's related intellectual property, was complete.

19.    As the Defendants attempted to close the transaction to purchase PCEC, at the end of August 2019, Defendants Hasbo and Crespo presented corporate documents and Wood's employment agreement with NewBridge to Wood at an in-person meeting at the offices of Law Firm Locke, Lord, LLP, in Houston, TX. Wood did not have an opportunity for independent counsel to review or evaluate the documents presented to him. In fact, his proposed employment agreement reduced the terms previously offered by Crespo and Hasbo in multiple communications and in-person meetings over the course of the preceding months in several material ways; including a) reducing a 2-year severance package to 1 year, b) reducing Wood's proposed allowance for reimbursements (for, e.g., vehicles, etc.), c) narrowing and making less favorable terms for termination, and d) reducing vacation time.

20.    However, when Wood commented to Fiyaz, Crohn, Hasbo and Crespo about the late receipt of the documents, as well as the terms therein, the individual Defendants told Wood to sign the documents, that they were not negotiable, and if the deal did not close, Wood would lose NewBridge Resources. Crespo, like the others, made repeated comments at that same meeting to Wood that the documents were fine, that Wood would be "taken care of" as CEO and assured him that he would be the "Captain of our ship;" but simultaneously threatening that he needed to sign the documents or suffer the consequences if a deal fell through. Again, Wood did not

1 have independent counsel representing him on the negotiation of these documents and
2 did not have the ability to consult with independent counsel at the time he was forced
3 to sign them.  NewBridge's acquisition of PCEC occurred at this same time.

4     21.    Ultimately, under the duress of comments from Fiyaz and the pressure
5 from the remaining individual Defendants, Wood signed the NewBridge corporate
6 documents, as well as the EA.  Wood felt that if he failed to enter into these new, but
7 materially changed deals, he would lose his current NewBridge Resources assets as
8 threatened by the individual Defendants.  According to the terms of the EA Wood was
9 to operate as CEO of Newbridge.  In that role, certain duties we delegated to Wood by
10 the NewBridge Board, as contemplated in Section 1 of the EA.  While those delegated
11 duties were memorialized in Exhibit B of the NewBridge Operating Agreement,
12 attached hereto as "Exhibit B" and incorporated herein, Wood signed the EA with the
13 understanding that those duties were terms of the EA.  However, Wood was never
14 allowed to perform those duties as formally delegated by the NewBridge Board
15 according to the terms of the EA.

16     22.    Immediately upon the start of Wood's role as CEO of NewBridge, it
17 became apparent that he was not allowed to operate in his new role.  Similarly, Wood
18 was also named by Defendants Fiyaz, Hasbo, Crohn and Crespo CEO of PCEC upon
19 the close of the transaction.  However, he was not allowed to execute on the promises
20 made by Fiyaz and the other individual Defendants regarding the operation of both
21 NewBridge and PCEC, which was the reason he agreed to the investment from Fiyaz
22 in the first place.  Defendant Hasbo usurped Wood's role as CEO beginning on day
23 one. Defendants Hasbo, Crohn, and Crespo, in their capacity as board members,
24 prevented Wood from making hiring and firing decisions, budgetary decisions, or any
25 other decision involving the day-to-day operations of the business. He was also
26 prevented by each of the individually named defendants from developing the deals he
27 had long pursued.  Instead, at the direction of Crohn, Fiyaz and Crespo, Hasbo acted
28 in the role of CEO that was outlined by the NewBridge board of directors.  On

1  multiple occasions Wood was prevented from exercising any of the duties
2  contemplated by the EA.  For example, closed door meetings about the operation of
3  NewBridge were routinely held amongst the Individual Defendants, but without
4  Wood.  In violation of the EA, the Defendants' control of Wood was so extreme, he
5  was prevented from making even menial decisions, such as getting a reimbursement
6  for a car wash.  More importantly, Defendants Fiyaz and Hasbo prevented him from
7  exercising any part of the Business Plan by a) usurping day to day operation of
8  NewBridge, b) instructing subordinates not to take direction from Wood, c)
9  preventing Wood from collaborating with the Board of Directors (he was rarely even
10 informed of Board meetings and when he did receive notice it was the day before),
11 and d) restricting his ability to engage in long term planning and generally treating
12 him as nothing more than a powerless figurehead.  When Wood was able to
13 participate in Board Meetings, it was abundantly apparent that Defendants Hasbo and
14 Crespo had already made up their minds about any important decisions, that Wood's
15 input and vote would be completely disregarded; and that board meetings were an
16 empty ritual calculated by Hasbo and Crespo to rubber stamp the decisions they had
17 already made. Minutes from these Board Meetings routinely did not match what
18 occurred at the meetings that were attended by Wood.  Crespo routinely attempted to
19 have Wood sign corporate minutes that did not reflect the meetings that Wood was
20 allowed to attend, weeks or months after the meetings occurred.
21         23.    Instead, Crohn, Fiyaz, Hasbo and Crespo operated NewBridge, and by
22 extension, PCEC.  They did so without any input from Wood.  As a result of their sole
23 actions and bad faith, a lawsuit *Evergreen Capital Management, LLC v. The Bank of*
24 *New York Mellon Trust Company, N.A., et al, Superior Court for the State of*
25 *California, County of Los Angeles, Case Number 20STCCV26290,* was filed.  A true
26 and correct copy of that lawsuit is attached hereto as Exhibit "C" and incorporated
27 herein.
28 / / /





24. In the complaint filed in that matter, Wood is repeatedly named as the alleged bad actor by Plaintiff Evergreen Capital Management, LLC. However, the actions described therein were not undertaken by Wood. To the contrary, Wood informed Defendants Hasbo, Crespo and Crohn multiple times (including during board meetings in May of 2019 and again in June of 2019; as well as in multiple in-person meetings) that he believed their actions to be improper and illegal. The scheme to eliminate distributions to the Plaintiffs in that Action was willfully mismanaged and concocted by Fiyaz, Crohn, Hasbo and Crespo. E-mails from these individuals, while Wood was CEO of NewBridge and PCEC confirm the scheme by the Defendants, as well as Wood's objections thereto.

25. Further, the lawsuit does not address additional illegal schemes by all four individual Defendants to overstate the Asset Retirement Obligations ("ARO") of PCEC in an effort to defund the related Pacific Coast Oil Trust ("PCOT") and obtain all PCEC assets for themselves. Yet, as a result of the Defendants' illegal schemes, named in the lawsuit and otherwise, and their attribution of that scheme to Wood by PCEC, NewBridge and the individual Defendants, Wood has suffered harm to his reputation and his ability to engage in the oil and gas business.

26. Over the objections of Wood, NewBridge, and the Individual Defendants, as well as PCEC, caused numerous false statements to be included in SEC filings to be sent to PCOT's investors. Those false statements were attributed to Wood in the Evergreen suit. The false statements included, but were not limited to, reports regarding ARO, asset valuation and estimates regarding the longevity of oil and gas fields owned by PCOT, thus overstating the trust's assets by millions of dollars.

27. In addition to preventing Wood from working as he was contractually authorized to do; Defendants immediately began to attempt to replace Wood as CEO. E-mails from Crohn and Hasbo, from as early as December 2019, detail their plan to remove Wood as CEO. An e-mail from Crohn, dated December 11, 2019 states in relevant part, "The ambition should be to have a new CEO by 15. February . . . In

9
**SECOND AMENDED COMPLAINT**

1 addition, organization at PCEC need to be set up to current operations- Klaus to
2 implement reductions with Rob and Phill." Further, these e-mails and actions by
3 Defendants indicate that Defendants solely wanted to use the intellectual property
4 provided by Wood and had no intention of allowing him to continue as CEO once the
5 NewBridge agreements, including the EA, had been executed. Once they had his
6 knowledge of the deals presented in the Business Plan, they no longer had use for
7 Wood. Defendants improperly took Wood's intellectual property based upon false
8 promises, prevented him from operating as CEO, and then schemed to get rid of him.

9     28. Specifically, Defendants illegally obtained intellectual property for deals
10 relating, but not limited to, the value, business contacts for, deal terms and operational
11 status and field life of Greka Oil & Gas, Maverick Petroleum California, San Ardo
12 Field– Chevron, Amplify Energy Assets, Peak Oxnard, Round Mountain, CRC Assets
13 and South Tapo. Defendants prevented Wood from acquiring the above assets,
14 creating substantial lost income to Wood, which continues to present and beyond.
15 Each of the above assets was part of Wood's intellectual property prior to meeting and
16 working with Defendants. This intellectual property was misappropriated from Wood
17 by Defendants through their scheme to tell him he was going to "manage this
18 investment" yet immediately working to remove him as CEO of NewBridge and
19 PCEC to obtain his intellectual property. On information and belief, Defendants
20 Crohn, Hasbo, Crespo and Fiyaz instructed NewBridge's and PCEC's employees not
21 to take direction from Wood. Further, Defendants used these trade secrets to pursue
22 the above deals to the detriment of Wood.

23     29. Ultimately, on June 5, 2020, Defendants terminated Wood's employment
24 without cause. Pursuant to the EA, Wood was entitled to a severance in the amount of
25 One Million Dollars ($1,000,000.00). In addition, Wood was to receive
26 reimbursement for health insurance costs for twelve (12) months. In order to obtain
27 that severance and those healthcare benefits, Wood was to provide a release
28 agreement, as described in the EA. He did so on June 26, 2020. However,

Defendants never executed the release agreement and have failed to pay any severance benefits to Wood.

30. At no time prior to Wood's termination of employment did any Defendant attempt to modify the required severance agreement. However, after Wood's termination, and *after* he executed the severance agreement attached to his EA, Defendants, for the first time, proposed a modified release agreement. However, such modification broadly expanded the release terms, directly contradicting prior release terms provided in the exhibit to the EA, and included matters beyond Wood's employment with NewBridge, including, but not limited to, a separate lawsuit that Wood had filed in Delaware against NewBridge that was unrelated to his employment as CEO. Defendants' proposed modification, made after the EA was terminated by NewBridge, illegally attempted to coerce Wood to dismiss his Delaware claim if he wanted to receive his contractually guaranteed severance under the EA. As a result, these modifications were unreasonable by their own terms and due to the fact, they were made after the termination of the employment agreement by NewBridge.

31. Upon and since the termination of Wood's employment, NewBridge has failed to return personal property and assets of Wood. Despite repeated requests, NewBridge has informed Wood that he will not be allowed access to his personal property and that it will remain under NewBridge's control. That personal property includes, but is not limited to, the following: artwork, business records (unrelated to NewBridge), and Wood's personal tax records and information.

32. As a direct, foreseeable and proximate result of Defendants' actions, Plaintiff sustained general and special damages, including, but not limited to: (a) loss of income and benefits; (b) loss of earning capacity; (c) severe emotional distress; (d) impairment in the quality of life and the loss of life opportunities and (f) pre-judgment interest pursuant to Civil Code sections 3287 and 3288, as well as other provisions of law providing for pre-judgment interest; all in amounts to be proven at the time of trial.

33. Plaintiff is presently pursuing new business opportunities in Santa Barbara County in the oil and gas industry, which opportunities Defendants have told Wood would be barred by the unconscionable non-compete restriction in Section 6(c) of the EA currently in effect.

34. Plaintiff is informed and believes that the aforesaid acts directed toward the Plaintiff were carried out with a conscious disregard of Plaintiff's rights such as to constitute oppression, fraud or malice pursuant to Civil Code section 3294. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish and set an example of Defendants.

## FIRST CAUSE OF ACTION
## (Breach of Contract –
## Against Defendant NewBridge and Does 1-25)

35. Plaintiff incorporates by reference each and every allegation previously stated herein in paragraphs 1-34, as if fully restated herein, and further alleges against Defendant NewBridge and Does 1-25 as follows:

36. On June 5, 2020, Wood was informed by Defendants that his employment with NewBridge was terminated. He was further informed that the termination of his employment was without cause. According to the terms of the EA, to obtain his severance and benefits, Wood was required to submit and execute a release substantially in the form attached to the EA. Wood executed and delivered the exact agreement attached to the EA on or about June 26, 2020. Defendants did not execute the delivered agreement and have not paid any severance amounts or benefits to Wood.

37. Wood performed all obligations under the terms of the EA.

38. As stated herein, Defendants breached the terms of the EA. As a result of those breaches, Wood has suffered damages, including specific monetary damages.

/ / /
/ / /



## SECOND CAUSE OF ACTION

### (Breach of Contract –

### Against Defendant NewBridge)

39. Plaintiff incorporates by reference each and every allegation previously stated herein in paragraphs 1-38, as if fully restated herein, and further alleges against Defendant NewBridge and Does 1-25 as follows:

40. According to the terms of the EA, Wood was to have certain job duties and abilities to operate as CEO of NewBridge. Defendants, and each of them engaged in a deliberate scheme to prevent Wood from operating as CEO pursuant to the terms of the EA.

41. Further, while preventing Wood from operating as CEO, Defendants instead engaged in unauthorized and illegal acts that led to a lawsuit being filed, naming Wood as the actor responsible for the bad acts. Defendants, not Wood, were responsible for these actions.

42. Through these acts, Defendants breached the terms of the EA.

43. As a result of these breaches of contract, Wood has been unable to find new employment, has suffered monetary damages, including, amongst other damages, lost wages and business opportunities.

## THIRD CAUSE OF ACTION

### (Declaratory Relief –

### Against NewBridge)

44. Plaintiff incorporates by reference each and every allegation previously stated herein in paragraphs 1-43, as if fully restated herein, and further alleges against Defendant NewBridge and Does 1-25 as follows:

45. Section 6(c) of the EA consists of a non-compete provision that is currently in effect. This clause is contrary to California law.

/ / /

/ / /

46. Plaintiff is currently contemplating business opportunities in Santa Barbara County in the oil and gas industry, which opportunities could be barred or severely curtailed by enforcement of Section 6(c) of the EA.

47. Not only were the circumstances of entering into the EA unconscionable and under duress, but there are also no exceptions to California's prohibition on non-competition agreements. Therefore, this provision is against public policy.

48. To the extent there is a dispute over this provision, Plaintiff hereby requests a declaration from this Court that Plaintiff Wood is not prevented from engaging in competitive activities with Defendants.

## FOURTH CAUSE OF ACTION
## (Fraud – Intentional Misrepresentation –
## Against Defendants Fiyaz, Crohn, Hasbo and Does 1-25)

49. Plaintiff incorporates by reference each and every allegation previously stated herein in paragraphs 1-48, as if fully restated herein, and further alleges against Defendant NewBridge and Does 1-25 as follows:

50. Prior to the formation of NewBridge and the execution of the EA, the individual Defendants, and each of them knew that they would not keep Wood as CEO once NewBridge was formed. Yet, they repeatedly made promises to Wood to the contrary. They understood that Wood would not have entered into a deal with the Defendants if he understood there was a scheme to obtain his intellectual property and remove him from involvement in NewBridge, Wood would not have entered into the EA or signed the NewBridge formation documents.

51. However, Wood had no knowledge of this scheme at the time he signed the documents. He reasonably relied upon the promises repeatedly made by the individual Defendants regarding their ability to fund his projects, allow him to "manage the investments" and to allow him to operate the duties as CEO as delegated by the NewBridge board of directors.

///

14
**SECOND AMENDED COMPLAINT**

52. Instead, however, Wood was forced out as CEO, lost the opportunity to pursue several of the deals he had been cultivating and had his reputation in the industry severely damaged. As a result, he has suffered harm from the intentional misrepresentations of the individual Defendants.

53. The individual Defendants, and each of them intentionally misrepresented facts to Wood. (*Garamendi v. Golden Eagle Ins. Co.* (2005) 128 C.A.4th 452, 270.) As a result of these intentional misrepresentations, Wood has been damaged in an amount to be proven at the time of trial.

54. Further, Defendants' intentional misrepresentation was willful, fraudulent and malicious and carried out with reckless disregard for Wood, justifying the award of exemplary damages against Defendants.



## FIFTH CAUSE OF ACTION

## (Misappropriation of Trade Secrets - Civil Code section 3426 – Against All Defendants)

55. Plaintiff incorporates by reference each and every allegation previously stated herein in paragraphs 1-54, as if fully restated herein, and further alleges against Defendant NewBridge and Does 1-25 as follows:

56. Plaintiff Wood possessed proprietary information about potential oil and gas deals. This information was not publicly available and, prior to engaging with Wood, was not known to Defendants.

57. Defendants improperly induced Plaintiff to enter into the EA. The sole purpose of this illegal inducement was to obtain Plaintiff's trade secret information.

58. Upon information and belief, Defendants have used Plaintiff's trade secrets to the disadvantage of Plaintiff, and without his permission.

59. As a result of this illegal misappropriation, Plaintiff has been damaged in an amount to be proven at trial.

/ / /

/ / /



15
**SECOND AMENDED COMPLAINT**

60. Defendants' misappropriation of Plaintiff's trade secrets was willful, malicious and carried out with reckless disregard for Wood, justifying the award of exemplary damages against Defendants.

## SIXTH CAUSE OF ACTION

## (Unfair Competition Bus. & Prof. Code section 17200 –

## Against All Defendants)

61. Plaintiff incorporates by reference each and every allegation previously stated herein in paragraphs 1-60, as if fully restated herein, and further alleges against Defendant NewBridge and Does 1-25 as follows:

62. Defendants engaged in unlawful business practices as defined in California's Unfair Competition Law by a) supplying false information in SEC filings to PCOT investors, then falsely attributing their own fraudulent conduct to Wood constitute; and b) inducing Wood to enter into a series of agreements with them through knowingly false claims.

63. Defendant engaged in unfair business practices as defined by California's Unfair Competition Law by forcing him to sign the EA under duress, thereby depriving him of the opportunity to pursue existing business opportunities.

64. As a result of Defendant's unlawful and unfair business practices, Plaintiff has suffered harm because, amongst other things, Plaintiff has lost income, has lost business opportunities and has suffered harm to his reputation.

## SEVENTH CAUSE OF ACTION

## (Breach of Covenant of Good Faith and Fair Dealing –

## Against NewBridge and Does 1-25)

65. Plaintiff incorporates by reference each and every allegation previously stated herein in paragraphs 1-64, as if fully restated herein, and further alleges against Defendant NewBridge and Does 1-25 as follows:

/ / /

/ / /



16
**SECOND AMENDED COMPLAINT**



66. Wood entered into the EA under the impression that Defendants would honor the obligations and promises made in the Agreement. However, Defendants did not intend to, nor did they ever operate in good faith under the terms of the EA.

67. Plaintiff and Defendants were in a special relationship involving fiduciary-like characteristics due to their inherently unequal bargaining positions as well as Defendants' coercive conduct.

68. As a result of the actions described herein, Defendants, and each of them, had breached the covenant of good faith and fair dealing. As a result of the breach, Plaintiff has suffered harm in amount to be proven at the time of trial.

69. Defendants' breach of the covenant of good faith and fair dealing was tortious in nature, due to their fraudulent, deceitful and coercive conduct.

## EIGHTH CAUSE OF ACTION
## (Conversion –
## Against NewBridge and Does 1-25)

70. Plaintiff incorporates by reference each and every allegation previously stated herein in paragraphs 1-69, as if fully restated herein, and further alleges against Defendant NewBridge and Does 1-25 as follows:

71. After the termination of his employment from Defendant NewBridge, Wood had personal property, including, but not limited to, artwork from his parents, personal (non-NewBridge) business information and files, as well as personal tax information of Wood.

72. Wood has made repeated requests to NewBridge to obtain this personal information. However, NewBridge, through Rob Foss, has indicated that NewBridge will not give these personal items back to Wood.

73. NewBridge has no claim to the ownership of these personal assets of Wood. As such, they have illegal converted ownership of these assets.

/ / /

/ / /

74. Wood has suffered harm as a result of this conversion, not only as to the value of these items, but also for the additional costs Wood has incurred trying to recreate the records taken by NewBridge.

## JURY DEMAND

75. Plaintiff Wood hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Wood prays for a judgment as follows:

1. Special Damages,
2. General Damages,
3. Disgorgement and Restitution of all monies earned as a result of Defendants' unlawful acts,
4. Pre-Judgment and Post-Judgment interest,
5. Exemplary Damages,
6. A Declaration that Plaintiff is not bound by any non-competition provision, and
7. For such other costs and relief as the Court may deem just and proper.

DATED: March 26, 2021

FAUVER, LARGE, ARCHBALD & SPRAY, LLP

By:_____
Trevor D. Large
Christopher M. de la Vega
Attorneys for Plaintiff
SCOTT WOOD