QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Bruce E. Van Dalsem (Bar No. 124128)
   brucevandalsem@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
   Facsimile: (213) 443-3100

   Marc Greenwald (Bar No. 176072)
   marcgreenwald@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
   New York, New York 10010
   Telephone: (212) 849-7000
   Facsimile: (212) 849-7100

*Attorneys for Defendants NewBridge Resources Group, LLC, Pacific Coast Energy Company LP & John Crespo*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| SCOTT WOOD, an individual,<br><br>      Plaintiff,<br><br>      v.<br><br>NEWBRIDGE RESOURCES GROUP, LLC, a Delaware limited liability company; ALSHAIR FIYAZ, an individual; OSCAR CROHN, an individual; KLAUS HASBO, an individual; JOHN CRESPO, an individual; PACIFIC COAST ENERGY COMPANY LP; and, DOES 1 through 25, inclusive,<br><br>      Defendants. | **DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES & COUNTERCLAIMS**<br><br>Case No.  2:20-cv-10865 VAP (AGRx)<br><br>Trial Date:      None Set |

Defendants NewBridge Resources Group, LLC ("NewBridge"), Pacific Coast Energy Company LP ("PCEC"), and John Crespo (collectively, the "Served Defendants"),[1] by and through their counsel, answer the allegations in the Second Amended Complaint of Plaintiff Scott Wood (ECF No. 36), dated March 26, 2021 (the "Complaint"). Unless specifically admitted herein, the Served Defendants deny each of the allegations of Plaintiff's Complaint and specifically deny that Plaintiff is entitled to any relief whatsoever.

## I.    PARTIES

1.    The Served Defendants admit the allegations of Paragraph 1.

2.    The Served Defendants admit that NewBridge is a Delaware limited liability company; that NewBridge owns oil and gas assets in Santa Barbara County, California; that NewBridge entered into the Employment Agreement with Wood; and that NewBridge, through its affiliates, is authorized to do business in the State of California. To the extent the allegations of Paragraph 2 seek to paraphrase or characterize the contents of the Employment Agreement, that document speaks for itself. The Served Defendants deny any remaining allegations in Paragraph 2.

3.    The Served Defendants deny the allegations of Paragraph 3.

4.    The Served Defendants deny the allegations of Paragraph 4.

5.    The Served Defendants deny the allegations of Paragraph 5.

6.    The Served Defendants admit that Crespo is a board member of NewBridge. The Served Defendants deny the remaining allegations of Paragraph 6.

7.    The Served Defendants deny the allegation that PCEC's headquarters are in Los Angeles, California. The Served Defendants admit the remaining allegations of Paragraph 7.

8.    The allegations of Paragraph 8 contain legal conclusions to which no response is required. To the extent a further response is required, the Served Defendants deny the allegations of Paragraph 8.

---

[1]   The remaining defendants, Alshair Fiyaz, Oscar Crohn, Klaus Hasbo, and the fictitious "Doe" defendants, have not been served by Wood. As such, this Answer is on behalf of the Served Defendants only.

9.      The allegations of Paragraph 9 contain legal conclusions to which no response is required.  To the extent a further response is required, the Served Defendants state that they lack sufficient information to admit or deny the allegations of Paragraph 9.

## II.      JURISDICTION AND VENUE

10.      To the extent the allegations of Paragraph 10 seek to paraphrase or characterize the contents of the Employment Agreement, that document speaks for itself.  Defendants admit that venue is appropriate in this District for purposes of this action.  The remainder of the allegations in this paragraph contain legal conclusions to which no response is required.  To the extent a further response is required, Defendant deny the remaining allegations in Paragraph 10.

## III.      GENERAL ALLEGATIONS

11.      The Served Defendants deny the allegations of Paragraph 11.

12.      The Served Defendants deny the allegations of Paragraph 12.

13.      The Served Defendants deny the allegations of Paragraph 13.

14.      The Served Defendants admit that Wood already had in place a Texas limited liability company, NewBridge Resources, LLC, prior to the formation of NewBridge Resources Group, LLC. The Served Defendants deny the remaining allegations of Paragraph 14.

15.      The Served Defendants deny the allegations of Paragraph 15.

16.      To the extent the allegations of Paragraph 16 seek to paraphrase or characterize the contents of the Exhibit A to NewBridge's Operating Agreement, that document speaks for itself.  The remaining allegations of Paragraph 16 contain legal conclusions to which no response is required.  To the extent a further response is required, the Served Defendants deny the remaining allegations of Paragraph 16.

17.      The Served Defendants deny the allegations in Paragraph 17.

18.      The Served Defendants deny the allegations of Paragraph 18.

19.      The Served Defendants admit that Mr. Hasbo and Mr. Crespo met with Wood at the offices of Locke, Lord LLP in Houston, Texas at the end of August 2019.  The Served Defendants deny any remaining allegations of Paragraph 19.

20.    The Served Defendants admit that NewBridge acquired PCEC on September 3, 2019.  The Served Defendants deny the remaining allegations of Paragraph 20.

21.    The Served Defendants admit that Wood signed the Employment Agreement and the Operating Agreement and that the Employment Agreement provides that Wood shall serve as Chief Executive Officer of NewBridge.  The claims relating to the allegations that certain duties were delegated to Wood by the NewBridge Board were dismissed with prejudice by Judge Phillips' May 18, 2021 Order Granting Defendants' Motion to Dismiss ("May 18 Order," ECF No. 52), and thus do not a require a response.  To the extent a response is required, the Served Defendants admit that Exhibit B to the Second Amended Complaint is a true and accurate copy of the Delegating Resolution attached as Exhibit B to NewBridge's Operating Agreement.  To the extent the allegations of Paragraph 21 seek to paraphrase or characterize the contents of Exhibit B to NewBridge's Operating Agreement, that document speaks for itself.  The Served Defendants deny the remaining allegations of Paragraph 21.

22.    The allegations in Paragraph 22 were held by Judge Phillips' May 18 Order to fail Rule 9(b)'s requirements and thus have been "stripped" from the Complaint.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To the extent a response is required, the Served Defendants admit that Wood was appointed CEO of PCEC; the Served Defendants deny the remaining allegations of Paragraph 22.

23.    The allegations in Paragraph 23 were held by Judge Phillips' May 18 Order to fail Rule 9(b)'s requirements and thus have been "stripped" from the Complaint.  *See Kearns*, 567 F.3d at 1124.  To the extent a response is required, the Served Defendants admit that Exhibit C to the Second Amended Complaint is a true and accurate copy of the complaint in the lawsuit *Evergreen Capital Management, LLC v. The Bank of New York Mellon Trust Company, N.A., et al*, filed in the Superior Court for the State of California, County of Los Angeles; the Served Defendants deny the remaining allegations of Paragraph 23.

24.    The allegations in Paragraph 24 were held by Judge Phillips' May 18 Order to fail Rule 9(b)'s requirements and thus have been "stripped" from the Complaint.  *See Kearns*, 567 F.3d at 1124.  To the extent the allegations of Paragraph 24 seek to paraphrase or characterize the

contents of the document attached as Exhibit C to the Second Amended Complaint, that document speaks for itself. The Served Defendants deny the remaining allegations of Paragraph 24.

25.     The allegations in Paragraph 25 were held by Judge Phillips' May 18 Order to fail Rule 9(b)'s requirements and thus have been "stripped" from the Complaint. *See Kearns*, 567 F.3d at 1124. To the extent a response is required, the Served Defendants deny the allegations of Paragraph 25.

26.     The allegations in Paragraph 26 were held by Judge Phillips' May 18 Order to fail Rule 9(b)'s requirements and thus have been "stripped" from the Complaint. *See Kearns*, 567 F.3d at 1124. To the extent a response is required, the Served Defendants deny the allegations of Paragraph 26.

27.     The allegations in Paragraph 27 were held by Judge Phillips' May 18 Order to fail Rule 9(b)'s requirements and thus have been "stripped" from the Complaint. *See Kearns*, 567 F.3d at 1124. To the extent a response is required, the Served Defendants deny the allegations of Paragraph 27.

28.     The allegations of Paragraph 28 contain legal conclusions to which no response is required. To the extent a response is required, the Served Defendants deny the allegations of Paragraph 28.

29.     The Served Defendants admit that Wood was terminated as Chief Executive Officer pursuant to a vote of the NewBridge Board in June 2020. Defendants deny that the termination occurred on June 5, 2020; the NewBridge Board terminated Wood as Chief Executive Officer on June 6, 2020. The remainder of the allegations in Paragraph 29 contain legal conclusions to which no response is required. To the extent the allegations of Paragraph 29 seek to paraphrase or characterize the contents of the Employment Agreement, that document speaks for itself. To the extent a response is required, the Served Defendants deny the remaining allegations of Paragraph 29.

30.     The Served Defendants admit that NewBridge sent Wood a proposed release agreement after Wood's termination, which NewBridge properly modified pursuant to the terms of

the Employment Agreement.  The Served Defendants deny any remaining allegations of Paragraph 30.

31.    The Served Defendants deny the allegations in Paragraph 31.

32.    The allegations in Paragraph 32 contain legal conclusions to which no response is required.  To the extent a response is required , the Served Defendants deny the allegations of Paragraph 32.

33.    The claims relating to the non-competition provision in Section 6(c) of the Employment Agreement were dismissed by Judge Phillips' May 18 Order, and thus they do not a require a response.  To the extent a response is required, the Served Defendants have insufficient knowledge regarding opportunities which Wood is pursuing to admit or deny that allegation; the Served Defendants deny the remaining allegations of Paragraph 33.

34.    The Served Defendants deny the allegations of Paragraph 34.

<u>**AS TO PLAINTIFF'S FIRST CAUSE OF ACTION**</u>

<u>**(Breach of Contract –**</u>

<u>**Against Defendant NewBridge and Does 1-25)**</u>

35.    The Served Defendants incorporate by reference their responses to Paragraphs 1 through 34 as though fully restated herein.

36.    The Served Defendants admit that on June 5, 2020, one of K-4's investors informed Wood that, the following day, a majority of the Board of NewBridge intended to vote in favor of his termination without cause as Chief Executive Officer.  Defendants deny that Wood was terminated without cause on June 5, 2020; the NewBridge Board terminated Wood as Chief Executive Officer on June 6, 2020.  The Served Defendants admit that they have not paid severance amounts to Wood, as he is not entitled to them because he did not properly comply with the condition precedent of executing a release as reasonably modified by NewBridge.  To the extent the allegations of Paragraph 36 seek to paraphrase or characterize the contents of the Employment Agreement, that document speaks for itself.  The Served Defendants deny any remaining allegations in Paragraph 36.

37.    The Served Defendants deny the allegations of Paragraph 37.

38.     The allegations in Paragraph 38 contain legal conclusions to which no response is required.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 38.

### AS TO PLAINTIFF'S SECOND CAUSE OF ACTION

### (Breach of Contract –

### Against Defendant NewBridge)

39.     The Served Defendants incorporate by reference their responses to Paragraphs 1 through 39 as though fully restated herein.  Wood's second cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.

40.     Wood's second cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 40.

41.     Wood's second cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 41.

42.     Wood's second cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 42.

43.     Wood's second cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants have insufficient knowledge to admit or deny whether Wood has been unable to find new employment; the Served Defendants deny the remaining allegations of Paragraph 43.

## AS TO PLAINTIFF'S THIRD CAUSE OF ACTION

### (Declaratory Relief –

### Against NewBridge)

44.     The Served Defendants incorporate by reference their responses to Paragraphs 1 through 43 as though fully restated herein.  Wood's third cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.

45.     Wood's third cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 45.

46.     Wood's third cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants have insufficient knowledge to admit or deny whether Wood is currently contemplating business opportunities in Santa Barbara County in the oil and gas industry; the Served Defendants deny the remaining allegations of Paragraph 46.

47.     Wood's third cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 47.

48.     Wood's third cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 48.

## AS TO PLAINTIFF'S FOURTH CAUSE OF ACTION

### (Fraud – Intentional Misrepresentation –

### Against Defendants Fiyaz, Crohn, Hasbo and Does 1-25)

49.     The Served Defendants incorporate by reference their responses to Paragraphs 1 through 48 as though fully restated herein.  Paragraph 49 of Plaintiff's Complaint does not require a response because it concerns claims brought only against defendants that Wood has not served. To the extent a response is required, the Served Defendants deny the allegations in Paragraph 49.

50.     Paragraph 50 of Plaintiff's Complaint does not require a response because it concerns claims brought only against defendants that Wood has not served.  To the extent a response is required, the Served Defendants deny the allegations in Paragraph 50.

51.     Paragraph 51 of Plaintiff's Complaint does not require a response because it concerns claims brought only against defendants that Wood has not served.  To the extent a response is required, the Served Defendants deny the allegations in Paragraph 51.

52.     Paragraph 52 of Plaintiff's Complaint does not require a response because it concerns claims brought only against defendants that Wood has not served.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 52.

53.     Paragraph 53 of Plaintiff's Complaint does not require a response because it concerns claims brought only against defendants that Wood has not served.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 53.

54.     Paragraph 54 of Plaintiff's Complaint does not require a response because it concerns claims brought only against defendants that Wood has not served.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 54.

## AS TO PLAINTIFF'S FIFTH CAUSE OF ACTION

## (Misappropriation of Trade Secrets - Civil Code section 3426 –

## Against All Defendants)

55.     The Served Defendants incorporate by reference their responses to Paragraphs 1 through 54 as though fully restated herein.

56.     The Served Defendants deny the allegations of Paragraph 56.

57.     The allegations in Paragraph 57 contain legal conclusions to which no response is required.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 57.

58.     The allegations in Paragraph 58, specifically that Wood's purported knowledge constitutes "trade secrets," contain legal conclusions to which no response is required.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 58.

59.    The allegations in Paragraph 59 contain legal conclusions to which no response is required.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 59.

60.    The allegations in Paragraph 60 contain legal conclusions to which no response is required.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 60.

## AS TO PLAINTIFF'S SIXTH CAUSE OF ACTION

### (Unfair Competition Bus. & Prof. Code section 17200 –

### Against All Defendants)

61.    The Served Defendants incorporate by reference their responses to Paragraphs 1 through 60 as though fully restated herein.  Wood's sixth cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.

62.    Wood's sixth cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 62.

63.    Wood's sixth cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 63.

64.    Wood's sixth cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 64.

## AS TO PLAINTIFF'S SEVENTH CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing –

### Against NewBridge and Does 1-25)

65.    Defendants incorporate by reference their responses to Paragraphs 1 through 64 as though fully restated herein.  Wood's seventh cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.

66.     Wood's seventh cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 66.

67.     The claims relating to these allegations were dismissed by Judge Phillips' May 18 Order, and thus they do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 67.

68.     Wood's seventh cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 68.

69.     Wood's seventh cause of action has been dismissed with prejudice by Judge Phillips' May 18 Order, and thus these allegations do not require a response.  To the extent a response is required, the Served Defendants deny the allegations of Paragraph 69.

## AS TO PLAINTIFF'S EIGHTH CAUSE OF ACTION

### (Conversion –

### Against NewBridge and Does 1-25)

70.     The Served Defendants incorporate by reference their responses to Paragraphs 1 through 69 as though fully restated herein.

71.     The Served Defendants have insufficient information to determine what property Wood possessed, which is what Paragraph 71 of the Second Amended Complaint references.  To the extent Paragraph 71 of the Second Amended Complaint is meant to suggest that NewBridge possessed Wood's personal property after his termination as CEO, the Served Defendants deny the allegations in Paragraph 71.

72.     The Served Defendants deny the allegations of Paragraph 72.

73.     The Served Defendants deny the allegations of Paragraph 73.

74.     The Served Defendants deny the allegations of Paragraph 74.

## AS TO PLAINTIFF'S JURY DEMAND

75.     The Served Defendants also demand a jury trial on all issues so triable.

## **AS TO PLAINTIFF'S PRAYER FOR RELIEF**

For the reasons within, the Served Defendants deny that Wood is entitled to any relief on his claims.

**<u>AFFIRMATIVE DEFENSES</u>**

The Served Defendants allege and assert the following affirmative defenses in further response to Plaintiff's Complaint, while not agreeing or conceding that they bear the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.  The Served Defendants reserve the right to assert additional defenses, affirmative or otherwise, based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of Plaintiff's positions in this litigation.

**FIRST AFFIRMATIVE DEFENSE**

(Failure to State a Claim for Relief)

The Second Amended Complaint fails to state a claim on which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

(Defenses to First Breach of Contract Claim)

Wood's first breach of contract claim relating to an alleged entitlement to contractual severance fails in whole or in part on one or more of the following grounds:

a) Wood's claim and the relief sought fail in whole or in part because of Wood's own prior material acts, omissions, non-performance, repudiation, and/or breach of the Employment Agreement; or

b) Wood's claims fail due to failure to satisfy a condition precedent, including but not limited to Wood's failure to execute the release in the reasonably modified form provided by NewBridge within 60 days of his termination.

**THIRD AFFIRMATIVE DEFENSE**

(Trade Secret Defenses)

Wood's claim relating to alleged violations of the California Uniform Trade Secrets Act ("CUTSA"), fails in whole or in part on one or more of the following grounds:

a) Wood lacks standing to bring a CUTSA claim because he has failed to demonstrate ownership of the alleged trade secrets;

b)  Wood lacks standing to bring a CUTSA claim because he transferred ownership of any alleged trade secrets to NewBridge and/or PCEC;

c)  Wood fails to establish what information he seeks to protect as an alleged trade secret;

d)  Wood has failed to establish that any of the information he seeks to protect rises to the level of or should be classified as a legal trade secret;

e)  Wood cannot show that he took reasonable steps to maintain the secrecy or confidentiality of some or all of the information that is the subject of his CUTSA claim, as required by Cal. Civ. Code § 3426.1(d)(2).

f)  Wood cannot show that the information that is the subject of his CUTSA claim is a trade secret, because Wood disclosed the information to the Served Defendants and/or third parties without identifying the information as a trade secret;

g)  Wood cannot establish that the information that is the subject of his CUTSA claim is a trade secret, because the information can be independently discovered;

h)  Wood's alleged trade secrets were already in the public domain;

i)  Wood's alleged trade secrets were readily ascertainable or known to or within the oil and gas industry in the Western United States, an industry that Wood and each of the Served Defendants participated in;

j)  The Served Defendants do not possess and/or have not misappropriated any property belonging to Wood, including but not limited to alleged trade secrets belonging to Wood;

k)  Wood cannot establish that the Served Defendants used or disclosed trade secrets or other confidential or proprietary information belonging to Wood;

l)  Any information accessed, viewed, used, or transferred by the Served Defendants contained no confidential, proprietary, or trade secret information belonging to Wood; or

m) Defendants never relied on any such alleged trade secrets, took precautions to prevent the use of any such alleged trade secrets, and/or independently developed such alleged trade secrets.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS

**FOURTH AFFIRMATIVE DEFENSE**

(Defenses to Conversion Claim)

Wood's conversion claim fails in whole or in part on one or more of the following grounds:

a)   Wood does not allege with particularity or properly define what specific property was taken from him;

b)   Wood does not own the property that is the subject of his conversion claim, and, as such, it is impossible as a matter of law for NewBridge's use of such property to constitute conversion;

c)   Wood cannot show that NewBridge engaged in conversion because he cannot show that NewBridge interfered with any possessory interest of Wood in the alleged property that is the subject of Wood's conversion claim;

d)   NewBridge has not deprived Wood of the use of any tangible or intangible property that Wood owns, and such omission is fatal to Wood's conversion claim; or

e)   Wood's conversion claim is moot because NewBridge has already transferred to Wood all the property that it believes might be subject to Wood's conversion claim.

**FIFTH AFFIRMATIVE DEFENSE**

(No Damages)

Wood's Complaint fails in whole or in part because Wood's alleged damages were not proximately caused by any act or omission of the Served Defendants.

**SIXTH AFFIRMATIVE DEFENSE**

(Damages Caused By Wood's Own Actions)

To the extent that Wood has suffered damages, which the Served Defendants expressly deny, those damages are the result of his own actions.

**SEVENTH AFFIRMATIVE DEFENSE**

(Damages Caused By Others)

To the extent that Wood has suffered damages, which the Served Defendants expressly deny, those damages are the proximate results of intervening and superseding acts by others, and

1   were not proximately caused by the Served Defendants.  The Served Defendants have no

2   responsibility for such damages.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Speculative Damages)

5   Wood's claims for damages are speculative, ambiguous, and illusory, and any award of

6   damages against any of the Served Defendants would be improper.  Wood has failed to allege

7   special damages as required.

### NINTH AFFIRMATIVE DEFENSE

#### (Exemplary Damages Not Warranted)

10   The Served Defendants cannot be held liable for any exemplary, punitive or other similar

11   damages, because, at all time, the Served Defendants acted in good faith with the intent to comply

12   with all legal obligations.  The Served Defendants deny that punitive and/or exemplary damages

13   against the Served Defendants are warranted because at no time did the Served Defendants intend

14   to injure Wood or to act wrongfully, with malice, or with reckless indifference toward Wood's

15   rights under the law.

### TENTH AFFIRMATIVE DEFENSE

#### (Failure to Mitigate)

18   Wood's claims fail because Wood has failed to use reasonable efforts to avoid any alleged

19   harm and to mitigate his claimed damages.

### ELEVENTH AFFIRMATIVE DEFENSE

#### (Setoff and Recoupment)

22   Wood's claims fail because of the doctrines of setoff and recoupment.

### TWELFTH AFFIRMATIVE DEFENSE

#### (Equitable Defense – Unclean Hands)

25   Wood's claims, in whole or in part, fail due to the doctrine of unclean hands.  For example,

26   Wood's conversion and first breach of contract claims fail due to the unclean hands doctrine

27   because, as alleged *infra* in NewBridge's counterclaims, Wood stole computer equipment

28   containing confidential commercial information from NewBridge on the date of his termination

and has refused to return either the equipment or the information that it contains.  Wood's unlawful theft and retention of NewBridge's property upon his termination in violation of the Employment Agreement is necessarily related to his claims that NewBridge allegedly converted his property at around the same time and is required to pay him severance following his termination.  Similarly, Wood's CUTSA claim fails due to the unclean hands doctrine because Wood (1) misrepresented the value of the deals and business opportunities that he alleged constituted trade secrets when he contractually transferred those deals and business opportunities to NewBridge upon its formation, and (2) tortiously interfered with NewBridge's pursuit of the HVI Cat Canyon/Greka deal, which Wood alleges constituted a trade secret, as alleged *infra* in NewBridge's counterclaims.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Equitable Defense – Waiver)

Wood's claims, in whole or in part, fail due to the doctrine of waiver.  Specifically, and without limitation, Wood's CUTSA claim fails due to waiver because Wood committed numerous overt actions indicating an intention to abandon any personal rights over the business opportunities and deals that he alleges are trade secrets.  Wood contractually transferred these business opportunities and deals to NewBridge upon its formation.  And upon becoming CEO of NewBridge, Wood treated these business opportunities and deals as the property of NewBridge and pursued them on behalf of NewBridge in his capacity as CEO.  Wood's first breach of contract claim likewise fails due to waiver because Wood waived his right to severance by failing to respond to or acknowledge the reasonably modified release that NewBridge provided to him on July 17, 2020.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Equitable Defense – Equitable Estoppel)

Wood's claims, in whole or in part, fail due to the doctrine of equitable estoppel.  Specifically, and without limitation, Wood's CUTSA claim fails due to equitable estoppel.  By signing the Operating Agreement and Employment Agreement and representing that he had consulted with independent counsel, he acted in such a way that the Served Defendants had the

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS

1  right to believe that Wood had validly transferred the business opportunities and deals that he now

2  alleges constitute trade secrets to the Served Defendants.  The Served Defendants were ignorant of

3  the facts, including but not limited to Wood's alleged inability to consult counsel, that Wood now

4  alleges render that contractual transfer unenforceable.  The Served Defendants further relied on

5  Wood's actions to their injury by pursuing the business opportunities and deals that Wood now

6  belatedly alleges constitute trade secrets.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Defendant and Counter-Plaintiff NewBridge Resources Group, LLC ("NewBridge") files these Counterclaims seeking relief from the actions of Scott Wood ("Wood") and those acting at his direction.  These Counterclaims seek relief for damages arising out of: (1) Wood's violation of his employment contract  and commission of conversion by seizing and refusing to return several computer servers which belong to NewBridge, as well as stealing funds belonging to the company; (2) Wood's violation of his employment contract by refusing to return the information critical to the operation of NewBridge's business that is contained in those servers; (3) Wood's violation of  his employment contract by disseminating confidential information, including regarding the operations of NewBridge's subsidiary, Pacific Coast Energy Company LP ("PCEC"); and (4) Wood's tortious interference with NewBridge's potential acquisition of certain assets.

I.      **NATURE OF THE CLAIMS**

1.      NewBridge was formed in 2019 as a partnership between K-4 Oil, LLC ("K-4"), an oil and gas investor, and Wood, a former oil and gas executive who presented himself as a well-connected authority on energy resources in the United States.  K-4 and Wood agreed that Wood would contribute his purported expertise and the assets of his existing company, NewBridge Resources, LLC ("Original NewBridge") to the partnership, while K-4 contributed capital funding.

2.      On September 3, 2019, K-4 and Wood entered into an Operating Agreement (the "Operating Agreement"), which describes the procedures by which NewBridge Resources Group, LLC, their joint venture entity, would operate.

3.      The "Business Plan" attached to the Operating Agreement noted that one of the targets for growing the company would be an acquisition of certain assets from HVI Cat Canyon, Inc. (also referred to as "Greka").

4.      On the same day, NewBridge and Wood executed an employment agreement providing for Wood's employment as NewBridge's first Chief Executive Officer (the

"Employment Agreement" or "EA").[2]  Pursuant to the Employment Agreement, Wood agreed to safeguard NewBridge's confidential information and intellectual property and to promptly return all company property to NewBridge if he was terminated as CEO.

5.      Following the execution of the Operating and Employment Agreements, Wood began to serve as CEO.  Almost immediately, it became clear that Wood was ill-suited and ill-equipped to run NewBridge successfully.  He struggled to run the company in a financially effective manner and failed to act with sufficient foresight.  He was also a poor manager who verbally abused and berated NewBridge employees, including by threatening to terminate employees who questioned him.

6.      In particular, Wood failed to secure necessary refinancing for NewBridge when the company was faced with a liquidity shortfall early in 2020.  Wood failed to craft a refinancing approach that would be compatible with NewBridge's existing loan arrangements, and was unable to explain to NewBridge's Board how the intercreditor relationship between proposed new financing sources and NewBridge's existing lender would work.

7.      Wood's poor performance as CEO threatened the continued existence of NewBridge.

8.      As a result of Wood's poor leadership, on June 5, 2020, Wood was informed that the following day, a majority of the Board of NewBridge intended to vote in favor of his termination as Chief Executive Officer.

9.      In response, Wood directed his agents to break into and steal NewBridge's property in the pre-dawn hours of Saturday, June 6.  Specifically, Wood sent his personal assistant and several individuals who worked for Wood on his ranch to drill through the locks on NewBridge's office door and remove computer monitors, servers, and other electronic equipment (the "Stolen Equipment") from NewBridge's offices in Houston, Texas.

---

[2]  The Employment Agreement is attached to the Second Amended Complaint as Exhibit A. *See* ECF No. 36-1.

10.     The Stolen Equipment was part of Wood's initial contribution to NewBridge, and was thus property of the company itself.  Additionally, it contained valuable and proprietary information necessary to the effective operation of NewBridge's business.

11.     Additionally, on June 6, 2020, Wood had his agents withdraw tens of thousands of dollars (specifically, $77,620.98) from a bank account held by NewBridge at Prosperity Bank (the "Stolen Funds").

12.     Wood's seizure and retention of the Stolen Funds, the Stolen Equipment, and the confidential information and intellectual property that it contained were contrary to his continuing obligations under the Employment Agreement.

13.     Though Plaintiff engaged in good faith negotiations with Wood, he continually refused to return NewBridge's property.

14.     In continuing retaliation for his firing, Wood also divulged Confidential Information that he learned in the course of his employment with NewBridge in violation of the covenants in the Employment Agreement.

15.     To further harm NewBridge, Wood spread false statements to interfere with NewBridge's attempts to purchase assets intended to grow the company.

16.     As a result of that wrongful activity, NewBridge lost the opportunity which it had been pursuing, to the detriment of the company.

II.     **PARTIES**

17.     Counterclaim-Plaintiff NewBridge is a limited liability company formed under the laws of the State of Delaware that operates in the oil and gas industry in the western United States. The sole member of NewBridge is K-4, a limited liability company organized under the laws of the State of Delaware.  The sole member of K-4 is Svati Limited, a Bahamas corporation with its principal place of business in the Bahamas.  Thus, NewBridge is a citizen of the Bahamas.

18.     Counterclaim-Defendant Wood is the former CEO of NewBridge, and was a 50% owner of NewBridge until K-4 exercised its contractual rights to purchase his holdings in NewBridge. As Wood has stated in the March 26, 2021 Second Amended Complaint, ECF No. 36, Wood is a citizen of California and a resident of Santa Barbara County.

III.    **JURISDICTION AND VENUE**

19.    Subject matter jurisdiction over NewBridge's counterclaims is proper pursuant to 28 U.S.C. 1332(a)(2) because it is a civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and it is between a citizen of a foreign state and a citizen of the state of California.

20.    Additionally, NewBridge's counterclaims are properly heard by this Court pursuant to 28 U.S.C. § 1367(a), because the counterclaims arise out of a common nucleus of operative fact with the claims in the Second Amended Complaint.

21.    This Court has personal jurisdiction over Scott Wood because he is a resident of Santa Barbara County. Additionally, Wood has submitted to the personal jurisdiction of this Court by bringing the present action.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because it is the district in which Wood, the sole Counterclaim Defendant, resides.

IV.    **ALLEGATIONS**

**The Formation of NewBridge and the Execution of the Employment Agreement**

23.    In October of 2018, an investor in K-4 met Scott Wood in a social setting.  Wood presented himself as an experienced oil and gas executive with extensive contacts in the United States energy industry.  At the time, Wood was rebounding from the collapse of his former oil and gas development company, and was searching for an opportunity to capitalize on his continued contacts in the oil and gas industry.  Wood was then operating an existing company, Original NewBridge.

24.    In 2019, K-4 and Wood jointly created NewBridge, to engage in investments in natural resources and energy.  In May of 2019 the parties entered into a binding term sheet (the "NewBridge Term Sheet"), which imposed obligations on both K-4 and Wood in connection with the creation of the entity which would become NewBridge.

25.    Even in the NewBridge Term Sheet, K-4's contributions to the company were larger than Wood's.  For example, K-4—through a special purpose vehicle—contributed $10,000,000 to the company, including the contribution of $1,800,000 into Wood's existing

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS

company, Original NewBridge, to pay for its outstanding accounts payable. Wood, for his part, contributed to NewBridge his interests in Original NewBridge, which were worth significantly less than the $10,000,000 K-4 contributed. As noted on the NewBridge Term Sheet, Wood's contribution of his interests in Original NewBridge included "Computer Equipment."

26.    On September 3, 2019, K-4, NewBridge, and Scott Wood entered into the Operating Agreement, which set forth the procedures by which NewBridge was to be operated.

27.    Concurrently with the execution of the Operating Agreement, Wood and NewBridge executed the Employment Agreement on September 3, 2019. Wood then began his employment with NewBridge as its Chief Executive Officer.

28.    Wood was represented by independent counsel in the negotiation of both agreements. Section 14.16 of the Operating Agreement, signed by Wood, states that "[Wood] has retained [Locke Lord] as legal counsel to [Wood] … in the preparation of [the Operating Agreement] or any documents related hereto," namely the Employment Agreement. Operating Agreement § 14.16 & Appendix A (definition of "LL"). The Employment Agreement, also signed by Wood, likewise states that Wood "consulted with independent legal counsel." EA § 11(e).

**The Employment Agreement Requires Wood To Safeguard The Company's Confidential Information And Intellectual Property**

29.    The Employment Agreement provided that Wood's employment "may be terminated at any time" by the Board. EA § 3. Wood's employment could be terminated "for Cause" in certain specified circumstances, (*id*. § 7(a)), or "at any time without Cause," subject to certain contractual notice provisions. *Id*. § 7(b).

30.    Section 6 of the Employment Agreement contains several provisions and restrictions regarding Wood's post-employment obligations.

31.    The Employment Agreement imposes an obligation on Wood not to "divulge, transmit, publish, copy, distribute, furnish or otherwise disclose or make accessible any Confidential Information, or use any Confidential Information for the benefit of anyone other than the Company," except in the proper course of his employment with NewBridge. EA § 6(d).

32.     The Employment Agreement provides that "Confidential Information," as used in the Employment Agreement, includes, among other things, "all information, inventions, trade secrets, know-how or other non-public, confidential or proprietary knowledge, information or data with respect to the products, services, operations, finances, business or affairs of the Company or with respect to confidential, proprietary or secret processes, methods, inventions, techniques, customers (including, without limitation, the identity of the customers of the Company and the specific nature of the services provided by the Company), employees (including, without limitation, the matters subject to this Agreement) or plans of or with respect to the Company or the terms of this Agreement)." EA § 6(d).

33.     Additionally, the Employment Agreement provides that any ideas or work product that Wood developed while employed at NewBridge belonged to NewBridge. Specifically, Wood agreed that "any and all Work product, … Confidential Information, … trade secrets, … and all other intellectual property relating to the business of the Company" that Wood developed during his employment at NewBridge constitutes "Company Intellectual Property" that "shall be the sole and absolute property of the Company." EA § 6(e).

34.     The Employment Agreement provides that "Company Intellectual Property," as used in the Employment Agreement, includes both "intellectual property relating to the business of the Company which are created … by the Executive" and any other "intellectual property as may be owned or acquired by the Company." EA § 6(e).

35.     The Employment Agreement further obligates Wood to return to NewBridge "[a]ll Confidential Information, Company Intellectual Property, files, records, correspondence, memoranda, notes or other documents (including, without limitation, those in computer-readable form) or property relating or belonging to the Company . . . promptly upon the Date of Termination." EA § 6(g).

36.     The Employment Agreement expressly provides that the covenants in Section 6, including Wood's obligations with respect to NewBridge's Confidential Information, Company Intellectual Property, and Company Property, survive any termination of the Employment Agreement and remain binding on Wood. EA § 11(j).

37.     The Employment Agreement also includes a provision whereby Wood agreed that his "breach of his covenants and agreements contained in this Section 6 would cause irreparable damage to the Company, the exact amount of which would be difficult to ascertain, and that the remedies at law for any such breach or threatened breach would be inadequate." EA § 6(h). Accordingly, Wood agreed that "the Company shall be entitled to [] institute and prosecute proceeding in any court of competent jurisdiction for … injunctive and other equitable relief to prevent the breach or any threatened breach thereof." *Id.* Such relief shall be "in addition to any other remedy which may be available at law or in equity." *Id.*

38.     The Employment Agreement is expressly governed by the laws of the State of California and contains a forum selection clause in favor "of the state and federal courts (as applicable) located in Santa Barbara County, California." EA § 11(a).

**Wood's Tenure and Termination as CEO**

39.     During his time as NewBridge's CEO, Wood's actions caused financial difficulty for the company.  His mismanagement of company resources and strategy caused the company to suffer serious liquidity shortfalls.

40.     By way of example, one of the expectations that the Board of NewBridge had for Wood was that he, as NewBridge's CEO, would make the Board aware of any near-term liquidity risks for the company and provide sound financing solutions to mitigate any negative consequences.

41.     When NewBridge was created in September of 2019, it was already holding a high debt-to-equity ratio.  For this reason, Wood's attention to NewBridge's financial state was a critical aspect of his duties as CEO.  However, Wood failed to effectively monitor NewBridge's financial state and act accordingly.

42.     In May of 2020, after the combined causes of the COVID-19 pandemic and disagreements between Russia and the Organization of the Petroleum Exporting Countries (commonly known as "OPEC") resulted in the value of oil and gas assets plunging, NewBridge found itself facing a shortfall of approximately $4-6 million for the year, with funding requirements starting in June of 2020.

43.     To deal with these escalating issues, Wood, as NewBridge's CEO, was tasked by NewBridge's Board to identify sources of capital to meet NewBridge's short-term liquidity needs and devise strategies to obtain new sources of capital.

44.     Wood failed to do so.  He did not craft a refinancing strategy that would be compatible with NewBridge's existing loan arrangements.  Despite repeated questions from NewBridge's Board, Wood was unable to explain how the intercreditor relationship between proposed refinancing lenders and NewBridge's existing lender would work.  Wood demonstrated a fundamental lack of understanding of how to effect a refinancing, a basic expectation of any corporate CEO.

45.     At times, due to Wood's poor stewardship, NewBridge was as few as 30 days away from running out of the cash necessary to operate the company.

46.     Wood also verbally abused and berated NewBridge's employees, and was generally a poor manager.  He did not like to be questioned, and threatened to terminate employees who he viewed as doing so.  By way of limited example, a high-ranking officer in NewBridge refused to work directly with Wood because of his propensity to scream at and threaten workers.

47.     As a result of Wood's consistent and pervasive poor performance, especially in light of the several chances Wood was provided, NewBridge's Board determined that Wood should be terminated from his employment as Chief Executive Officer without cause, for poor performance.

48.     The Directors called a meeting of the Board for June 6, 2020, to discuss a resolution calling for Wood's termination.  As a gesture of courtesy, on the morning of Friday, June 5, 2020, an investor in K-4 contacted Wood to inform him of the purpose of the meeting.  Wood was informed that, due to the intent of a majority of the Board to vote in favor of his termination, he would be terminated as CEO the following day.

49.     As a result of the impending Board meeting, and because it was the last available business day before the planned termination, in the afternoon of June 5, NewBridge's comptroller Lisa Toler contacted building security regarding access to NewBridge's offices.  At Ms. Toler's request, the lock to NewBridge's office was changed, and Ms. Toler was given the new keys.

50.     That same evening, Wood's personal assistant contacted Robert Foss, NewBridge's Chief Financial Officer.  She informed Mr. Foss that she intended to have an information technology ("IT") specialist come in to download back-ups of NewBridge's system.  Suspicious of the timing, and aware that there was no reason for such back-ups, Mr. Foss told her it was unnecessary.

51.     Ms. Toler worked late that evening at the NewBridge offices.  After business hours, Ms. Toler heard someone try to gain access to the office suite.  However, because the locks had been changed, the person was unable to gain access.

52.     Discomfited, Ms. Toler went home shortly afterwards.  The offices remained empty of authorized personnel until the following Monday.

53.     On Saturday, June 6, the Board, at a special meeting convened for that purpose, officially terminated Wood as CEO pursuant to Section 7(b) of the Employment Agreement.  The Board also appointed Mr. Foss as acting CEO.

**Wood Retains NewBridge's Confidential Information and Property**

A.     **The Break-In Is Discovered**

54.     When reporting to work on Monday, June 8, Ms. Toler discovered that NewBridge's office had been broken into.  Specifically, the lock on NewBridge's door had been destroyed with a power drill.

55.     Ms. Toler was escorted into NewBridge's offices by the building's security personnel, and discovered that the following items were missing:

- Three "rack" servers, containing information critical to the operation of NewBridge's business;

- Two Synology external hard drives;

- Several desktop computers; and

- Other technological hardware that NewBridge uses to engage in its business.

56.     A technology support vendor which works for NewBridge estimated that the total value for this equipment was approximately $56,440.

57.     Ms. Toler and Mr. Foss reviewed security footage and discovered that Wood's assistant attempted to access NewBridge's offices at 12:30 a.m. on June 6. After she was unable to gain access using her office key, she made several calls on her phone. Shortly afterwards, three men arrived, and together the group broke in NewBridge's offices by drilling out the lock. The group, one of which was identified as a laborer employed by Wood to assist on his ranch, removed the items listed above over the next five hours.

58.     After reviewing the video footage of the break-in and recognizing Wood's assistant, Mr. Foss contacted her to discuss the break-in at NewBridge's offices. Wood's assistant stated that she believed she had taken property belonging to Wood. She stated that she expected to be fired, and that she was acting at Wood's orders.

59.     Ms. Toler then accessed the bank account that NewBridge held at Prosperity Bank electronically. When she did, she discovered that there were three pending withdrawals from the account for $39,500.98, $9,000, and $29,120.00. A copy of each of the pending withdrawals is attached as Exhibit A, Exhibit B, and Exhibit C, respectively. NewBridge was the sole holder of the account at Prosperity Bank and had a right to possession over all of the funds in the account.

60.     After some difficulty, Mr. Foss managed to obtain the cooperation of the banks which held NewBridge's affected accounts to prevent Wood from wrongfully taking further funds. However, Prosperity Bank could not reverse the transactions. Thus, Wood retained the wrongfully taken money. Wood has used some or all of these funds to pay his personal debts and expenses.

61.     NewBridge incurred considerable expenses in responding to Wood's break-in and theft of funds from NewBridge's bank account. These expenses include, but are not limited to, $1,550 to purchase and install replacement computer equipment, approximately $10,000 in employee time spent searching files and reloading data, and approximately $50,000 to retain counsel to secure the return of the Stolen Equipment and Stolen Funds.

**Wood's Failure To Return The Stolen Equipment**

62.     Shortly after Wood withdrew the Stolen Funds and Wood's agents broke into NewBridge's office and removed the Stolen Equipment, counsel for NewBridge sought to resolve

the issues amicably and reached out to Wood's counsel to request the return of the Stolen Equipment and Stolen Funds.

63. Neither Wood nor his counsel denied that Wood had NewBridge's office broken into and the Stolen Equipment removed or that Wood had withdrawn the Stolen Funds from NewBridge's bank account. Instead, they argued that "[t]he servers belong[ed] to Mr. Wood [and t]hey were never conveyed in any manner to NewBridge." They also argued that the withdrawal of the Stolen Funds was authorized, despite failing to provide adequate documentation of Wood's alleged business expenses.

64. However, as the NewBridge Term Sheet makes clear, the assets that constitute the Stolen Equipment were in fact conveyed to NewBridge. At Exhibit A to the document, the NewBridge Term Sheet states that the "Computer Equipment" is an asset of NewBridge.

65. Further, the Stolen Equipment contains "Confidential Information" and "Company Intellectual Property" as defined by Sections 6(d) and 6(e) of the Employment Agreement. Section 6(g) of the Employment Agreement in turn provides that "[a]ll Confidential Information, Company Intellectual Property, files, records, correspondence, memoranda, notes or other documents (including, without limitation, those in computer-readable form) or property relating or belonging to the Company … will be the exclusive property of the Company." EA § 6(g).

66. Despite several attempts by NewBridge, Wood has failed to return the Stolen Funds and the Stolen Equipment.

**Wood Tortiously Interferes With the Purchase of Certain Assets from HVI Cat Canyon, Inc.**

67. Continuing his campaign to damage NewBridge in retaliation for his lawful termination, Wood sought to sabotage NewBridge's efforts to obtain certain of the assets of an oil and gas corporation called HVI Cat Canyon, Inc. (also referred to as "Greka").

68. By June 6, 2020, when Wood was fired as NewBridge's CEO, NewBridge had been seeking to acquire Greka's assets. Months before, NewBridge had identified Greka as a potentially valuable acquisition which would help NewBridge grow its business. Indeed, Greka was identified as a potential prospect for growing NewBridge on the Business Plan attached to the Operating Agreement. Wood was thus aware that NewBridge was seeking to purchase Greka.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS

69. After Wood's removal as CEO, NewBridge's acting CEO Robert Foss continued negotiations with Greka's principals. Initially, negotiations proceeded in promising fashion.

70. Suddenly, on or about June 20, 2020, Mr. Foss was told he needed to contact the attorney for Greka's royalty owners. When he did so, the attorney informed Mr. Foss that he received a message from Wood stating, in sum and substance, that the equity owners of NewBridge were "slimy."

71. Wood also sent the bankruptcy Trustee for Greka (the "Trustee") and the attorneys for Greka's royalty owners an article detailing allegations against one of the equity holders of NewBridge's parent company, stating, in sum and substance: "Here is the type of criminal that you're dealing with."

72. Wood's statements gave the unmistakable impression that the accusations detailed in the article were true, and that the individual in question had engaged in criminal activity.

73. To dispel these notions, Mr. Foss had someone in NewBridge reach out to the Trustee. After this occurred, NewBridge believed that the issue had been resolved and its bid for Greka would be considered on its merits.

74. Instead, as a result of Wood's statements, the Trustee specifically moved to block NewBridge's ability to purchase Greka's assets out of bankruptcy.

75. NewBridge thus received nothing for the considerable sums it expended in pursuit of the Greka opportunity, including but not limited to $714,993 in legal fees NewBridge spent to retain counsel to represent its interests in Greka's bankruptcy proceedings.

**Wood Spreads NewBridge's Confidential Information**

76. After Wood was terminated as CEO, on several occasions he disseminated information he obtained during his employment with NewBridge.

77. This information constituted "Confidential Information" under Section 6(d) of the Employment Agreement, because it was "information . . . with respect to confidential, proprietary or secret processes, methods, inventions, techniques, customers . . . or plans of or with respect to the Company." EA § 6(d).

78.    In or about June or July of 2020, Wood contacted an individual involved in Greka's bankruptcy and told him that K-4's investors "were stealing the company" from him.

79.    Wood provided information about the process by which his interest in NewBridge was purchased by K-4 in those conversations.

80.    On July 20, 2020, Wood sent an email to several individuals including certain information about the operations of PCEC, a wholly-owned subsidiary of NewBridge, with respect to the Pacific Coast Oil Trust.

81.    Though much of the information in that email was false, certain of the information was confidential information about the operations of NewBridge, including its accounting practices, and information regarding meetings of NewBridge's Board.

### FIRST CAUSE OF ACTION
### (Breach of Contract – Retention of Company Property)

82.    NewBridge incorporates by reference herein the allegations in paragraph 1 through 81.

83.    Wood entered into the Employment Agreement on September 3, 2019.

84.    The Employment Agreement provides that Wood was obliged to return all "property relating or belonging to the Company" to NewBridge "promptly upon the Date of Termination." EA § 6(g).  This obligation survives Wood's termination.  *Id*. § 11(j).

85.    NewBridge complied with all material terms of the Employment Agreement, including by employing and paying Wood during the course of his employment.

86.    Pursuant to Section 7(b) of the Employment Agreement, NewBridge terminated Wood as CEO on June 6, 2020.

87.    That same day, Wood directed his agents to break into NewBridge's offices and remove the Stolen Equipment.  He also withdrew the Stolen Funds from NewBridge's account at Prosperity Bank.

88.    The Stolen Equipment includes servers, external hard drives, desktop computers, and other technological hardware that constitute "property relating or belonging to the Company" under the Employment Agreement.  EA § 6(g).  The Stolen Funds also constitute "property

relating or belonging to the Company" under Section 6(g) of the Employment Agreement and comprise three withdrawals for $39,500.98, $9,000, and $29,120.00, for a total of $77,620.98.

89.     Wood has refused to return the Stolen Equipment and Stolen Funds, in breach of the Employment Agreement.

90.     NewBridge has been harmed by Wood's breach and is entitled to money damages as a result of Wood's breach, including actual damages estimated at $185,610.98 for the value of the Stolen Equipment and the Stolen Funds, and the expenses that NewBridge incurred in purchasing and installing replacement computers and retaining counsel to attempt to retrieve the Stolen Equipment and Stolen Funds.

91.     NewBridge also seeks and is entitled to injunctive relief.  Pursuant to Section 6(h) of the Employment Agreement, Wood's "breach of his covenants and agreements contained in [] Section 6 would cause irreparable damage to the Company, … and the remedies at law for any such breach or threatened breach would be inadequate."  EA § 6(h).  Accordingly, NewBridge is "entitled to [] institute and prosecute proceedings … for [] injunctive and other equitable relief to prevent the breach or any threatened breach" of Wood's obligations under Section 6 of the Employment Agreement.  *Id*.  Such relief shall be "in addition to any other remedy which may be available at law or in equity."  *Id*.

92.     In these circumstances, NewBridge is entitled to an injunction to prevent such irreparable injury.  Wood should be enjoined from further breaching the Employment Agreement by preventing him from continuing to possess and store the Stolen Equipment and requiring him to return the Stolen Equipment and any other NewBridge property in his possession to NewBridge.

## SECOND CAUSE OF ACTION
### (Conversion)

93.     NewBridge incorporates by reference herein the allegations in paragraph 1 through 92.

94.     As the holder of the account with Prosperity Bank, NewBridge was, and continues to be, entitled to immediate possession of the funds deposited in that account, including the Stolen Funds.

95.     By withdrawing and failing to return the Stolen Funds, Wood intentionally took possession of, transferred, and/or prevented NewBridge from having access to those funds for a significant period of time.

96.     Wood's withdrawal of the Stolen Funds was not authorized by the Employment Agreement and NewBridge did not otherwise consent to or authorize Wood's actions.

97.     Wood has refused to return the Stolen Funds.

98.     As a direct result of Wood's intentional conversion of the Stolen Funds from NewBridge's account with Prosperity Bank, NewBridge has suffered damage in a sum capable of identification at trial, including at a minimum the $77,610.98 that Wood withdrew from the account.

99.     In converting the Stolen Funds, Wood is guilty of malice, oppression, and fraud as defined Section 3294 of the California Civil Code, thereby entitling NewBridge to an award of punitive damages in an amount to be determined at the time of trial.  The conduct alleged above was despicable and was done with the intent to injure NewBridge and for the personal financial benefit of Wood.

### THIRD CAUSE OF ACTION
#### (Breach of Contract – Retention of Confidential Information and Company Intellectual Property)

100.    NewBridge incorporates by reference herein the allegations in paragraph 1 through 99.

101.    Wood entered into the Employment Agreement on September 3, 2019.

102.    The Employment Agreement provided that Wood was obliged to return "Confidential Information, Company Intellectual Property, files, records, correspondence, memoranda, notes or other documents (including, without limitation, those in computer-readable form) … promptly upon the Date of Termination."  EA § 6(g).  This obligation survives Wood's termination.  *Id*. § 11(j).

103.    NewBridge complied with all material terms of the Employment Agreement, including by employing and paying Wood during the course of his employment.

104.    Pursuant to Section 7(b) of the Employment Agreement, NewBridge terminated Wood as CEO on June 6, 2020.

105.    That same day, Wood directed his agents to break into NewBridge's offices and remove the Stolen Equipment.

106.    The Stolen Equipment includes servers, external hard drives, desktop computers, and other technological hardware, all of which constitute "property relating or belonging to the Company" under the Employment Agreement.  EA § 6(g).  These items contain "Confidential Information, Company Intellectual Property, files, records, correspondence, memoranda, notes or other documents (including, without limitation, those in computer-readable form)," *id*., all of which Wood was obligated to return to the Company upon his termination.

107.    Wood has refused to return the Confidential Information, Company Intellectual Property, files, records, correspondence, memoranda, notes or other documents contained in the Stolen Equipment, in breach of the Employment Agreement.

108.    NewBridge has been harmed by Wood's breach and is entitled to money damages as a result of Wood's breach, including but not limited to actual damages estimated at $10,000 for the employee time spent searching files and reloading data to remedy the unlawful removal of the data the Stolen Equipment contained.

109.    NewBridge has stated a claim for breach of contract under California law.

110.    NewBridge also seeks and is entitled to injunctive relief.  Pursuant to Section 6(h) of the Employment Agreement, Wood's "breach of his covenants and agreements contained in [] Section 6 would cause irreparable damage to the Company, … and the remedies at law for any such breach or threatened breach would be inadequate."  EA § 6(h).  Accordingly, NewBridge is "entitled to [] institute and prosecute proceedings … for [] injunctive and other equitable relief to prevent the breach or any threatened breach" of Wood's obligations under Section 6 of the Employment Agreement.  *Id*.  Such relief shall be "in addition to any other remedy which may be available at law or in equity."  *Id*.

111.    In these circumstances, NewBridge is entitled to an injunction to prevent such irreparable injury.  Wood should be enjoined from further breaching the Employment Agreement

by preventing him from continuing to possess and store the Confidential Information, Company
Intellectual Property, and other data contained in the Stolen Equipment and requiring him to return
the data contained in the Stolen Equipment and any other Confidential Information or Company
Intellectual Property in his possession to NewBridge.

### FOURTH CAUSE OF ACTION
### (Breach of Contract – Dissemination of Confidential Information in Breach of EA § 6(d))

112.    NewBridge incorporates by reference herein the allegations in paragraph 1 through
111.

113.    Wood entered into the Employment Agreement on September 3, 2019.

114.    The Employment Agreement provided that Wood "acknowledge[d] that all
information, inventions, trade secrets, know-how or other non-public confidential or proprietary
knowledge, information or data with respect to the products, services, operations, finances,
business or affairs of the Company or with respect to confidential, proprietary or secret processes,
methods, inventions, techniques, customers (including, without limitation, the identity of the
customers of the Company and the specific nature of the services provided by the Company),
employee (including, without limitation, the matters subject to this Agreement) or plans of or with
respect to the Company or the terms of this Agreement) all of the foregoing collectively
hereinafter referred to as, 'Confidential Information') are property of the Company."  EA § 6(d).

115.    In signing the Employment Agreement, Wood "agree[d] that, except as required by
law or regulation or as legally compelled by court order (provided that in such case, [Wood] shall
promptly notify the Company of such order, shall cooperate with the Company in attempting to
obtain a protective order or to otherwise restrict such disclosure, and shall only disclose
Confidential Information to the minimum extent necessary to comply with any such law regulation
or order), during the Employment Term and at all times thereafter, [Wood] shall not directly or
indirectly, divulge, transmit, publish, copy, distribute, furnish or otherwise disclose or make
accessible any Confidential Information, or use any Confidential Information for the benefit of
anyone other than the Company."  EA § 6(d).

116.     NewBridge complied with all material terms of the Employment Agreement, including by employing and paying Wood during the course of his employment.

117.     In or about June or July of 2020, Wood contacted an individual involved in Greka's bankruptcy and told him that K-4's investors "were stealing the company" from him.

118.     Wood provided information about the process by which his interest in NewBridge was purchased by K-4 in those conversations.

119.     On July 20, 2020, Wood sent an email to several individuals including certain information about the operations of PCEC and NewBridge with respect to the Pacific Coast Oil Trust.

120.     These disclosures included Confidential Information, as defined by the Employment Agreement.

121.     These disclosures were not made pursuant to a legal requirement, nor did they consist of information which was otherwise public.

122.     NewBridge has stated a claim for breach of contract under California law.

123.     NewBridge also seeks and is entitled to injunctive relief.  Pursuant to Section 6(h) of the Employment Agreement, Wood's "breach of his covenants and agreements contained in [] Section 6 would cause irreparable damage to the Company, … and the remedies at law for any such breach or threatened breach would be inadequate."  EA § 6(h).  Accordingly, NewBridge is "entitled to [] institute and prosecute proceedings … for [] injunctive and other equitable relief to prevent the breach or any threatened breach" of Wood's obligations under Section 6 of the Employment Agreement.  *Id.*  Such relief shall be "in addition to any other remedy which may be available at law or in equity."  *Id.*

124.     In these circumstances, NewBridge is entitled to an injunction to prevent such irreparable injury.  Wood should be enjoined from further breaching the Employment Agreement by preventing him from continuing to divulge Confidential Information.

# FIFTH CAUSE OF ACTION
## (Tortious Interference with Prospective Economic Advantage)

125.    NewBridge incorporates by reference herein the allegations in paragraph 1 through 124.

126.    NewBridge had an economic relationship with Greka, in that the parties had been negotiating the potential purchase of certain of Greka's assets by NewBridge.

127.    Prior to Wood's interference, there was a probability of future economic benefit to NewBridge; specifically that NewBridge would be able to purchase Greka's assets out of bankruptcy.

128.    Wood was aware of the relationship between NewBridge, Greka, and the Trustee.

129.    Wood engaged in wrongful conduct, specifically by using Confidential Information he gained in the course of his employment with NewBridge and by defaming one of the equity holders of NewBridge's parent company to the Trustee and Greka's royalty owners.

130.    On or about June 2020, Wood communicated to theTrustee and attorneys representing Greka's royalty owners that the equity owners of NewBridge were "slimy" and that one of the equity holders of NewBridge's parent company was a "criminal."

131.    Wood's statements gave the unmistakable and false impression that the individual in question had engaged in criminal activity.

132.    Wood was aware that these statements were false.

133.    These statements, which suggest that the referenced individual engaged in criminal activity, are defamatory per se under California law and are thus tortious.

134.    Wood engaged in the wrongful and tortious conduct to disrupt NewBridge's relationship with Greka or with knowledge that disruption was substantially certain to occur.

135.    As a result of Wood's statements, Greka's Trustee specifically moved to block NewBridge as a purchaser of its assets.

136.    As a result of Wood's interference, NewBridge's relationship with Greka was disrupted.

137.    Because of Wood's actions, NewBridge was denied the opportunity to purchase Greka's assets out of bankruptcy.  NewBridge also sustained other damages from Wood's actions, including but not limited to the amounts expended on due diligence, any advisor fees to pursue the Greka opportunity, and the $714,993 it spent to retain counsel to represent its interests in Greka's bankruptcy proceedings.

138.    In interfering  with NewBridge's opportunity to purchase Greka's assets out of bankruptcy, Wood is guilty of malice, oppression, and fraud as defined in Section 3294 of the California Civil Code, and NewBridge is thus entitled to an award of punitive damages in an amount to be determined at the time of trial.  The conduct alleged above was despicable and was done with the intent to injure NewBridge.

139.    NewBridge has stated a claim for tortious interference with economic advantage under California law against Wood.

## JURY DEMAND

140.    NewBridge demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, NewBridge respectfully requests that this Court enter judgment against Counterclaim-Defendant Wood for the following:

A.    An order for injunctive relief (i) enjoining Wood and those in active concert with him from copying, distributing, storing, or facilitating copying, distribution, or storage of any of NewBridge's Confidential Information or Company Intellectual Property; (ii) enjoining Wood and those in active concert with him from possessing, using, or disclosing NewBridge's Confidential Information, Company Intellectual Property, Stolen Equipment, or any other property belonging to NewBridge; (iii) requiring Wood and those in active concert with him to return to NewBridge without limitation, the Stolen Equipment, the Stolen Funds, any Confidential Information, Company Intellectual Property, or other property

1    belonging to NewBridge contained in the Stolen Equipment, any work derived

2    from Confidential Information, Company Intellectual Property, or other property

3    belonging to NewBridge contained in the Stolen Equipment, and any other

4    Confidential Information, Company Intellectual Property, or other property

5    belonging to NewBridge in Wood's possession.

6    B.    Actual damages arising out of Wood's breach of his obligation under the

7    Employment Agreement not to retain NewBridge's property and conversion of the

8    Stolen Funds, including but not limited to $ 185,610.98 for the value of the Stolen

9    Equipment and Stolen Funds, and the expenses that NewBridge incurred in

10    purchasing replacement equipment and retaining counsel to attempt to retrieve the

11    Stolen Equipment and Stolen Funds;

12    C.    Actual damages arising out of Wood's breach of his obligation under the

13    Employment Agreement not to retain Confidential Information and Company

14    Intellectual Property, including but not limited to $10,000 for the employee time

15    spent searching files and reloading data to remedy the unlawful removal of the data

16    the Stolen Equipment contained;

17    D.    Actual damages arising out of Wood's breach of his obligation under the

18    Employment Agreement not to divulge Confidential Information;

19    E.    Actual damages arising out of Wood's tortious interference with NewBridge's

20    purchase of Greka, including but not limited to the $714,993 in legal fees that

21    NewBridge spent to retain counsel to represent its interests in Greka's bankruptcy

22    proceedings;

23    F.    Punitive damages;

24    G.    Attorneys' fees and costs incurred in this Action;

25    H.    Pre-judgment interest on all such damages; and

26    I.    For such other relief as the Court deems just and proper.

27

28

1    Dated: June 8, 2021                    Respectfully submitted,

2                                           QUINN EMANUEL URQUHART
                                            & SULLIVAN, LLP
3
                                             /s/ Bruce E. Van Dalsem
4                                           Bruce E. Van Dalsem
                                            Marc Greenwald
5
6                                           QUINN EMANUEL URQUHART
                                            & SULLIVAN, LLP
7                                           Bruce E. Van Dalsem (Bar No. 124128)
                                            brucevandalsem@quinnemanuel.com
8                                           865 South Figueroa Street, 10th Floor
                                            Los Angeles, California 90017-2543
9                                           Telephone:    (213) 443-3000
                                            Facsimile:    (213) 443-3100
10
11                                          Marc Greenwald (Bar No. 176072)
                                            marcgreenwald@quinnemanuel.com
12                                          51 Madison Avenue, 22nd Floor
                                            New York, New York 10010
13                                          Telephone:  (212) 849-7000
                                            Facsimile:    (212) 849-7100
14
15                                          *Attorneys for Defendants NewBridge Resources
                                            Group, LLC, Pacific Coast Energy Company LP
16                                          & John Crespo*

17

18

19

20

21

22

23

24

25

26

27

28