QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Bruce E. Van Dalsem (Bar No. 124128)
   brucevandalsem@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
   Facsimile: (213) 443-3100

   Marc Greenwald (Bar No. 176072)
   marcgreenwald@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
   New York, New York 10010
   Telephone:  (212) 849-7000
   Facsimile:  (212) 849-7100

*Attorneys for NewBridge Resources Group, LLC, Pacific Coast Energy Company LP & John Crespo*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| SCOTT WOOD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NEWBRIDGE RESOURCES GROUP, LLC, a Delaware limited liability company; ALSHAIR FIYAZ, an individual; OSCAR CROHN, an individual; KLAUS HASBO, an individual; JOHN CRESPO, an individual; PACIFIC COAST ENERGY COMPANY LP; and, DOES 1 through 25, inclusive,<br><br>Defendants. | SERVED DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11<br><br>Case No.  2:20-cv-10865 VAP (AGRx)<br>Consolidated with:<br>2:21-cv-04476-DSF-AGR<br><br>Date: November 15, 2021<br>Time: 2 p.m.<br>Place: First Street Courthouse<br>        Courtroom 8A, 8th Floor<br>        350 West 1st Street<br>        Los Angeles, CA 90012<br><br>Trial Date:         January 18, 2022 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 15, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Virginia A. Phillips, at First Street Courthouse, 350 W 1st Street, Courtroom 8A, 8th Floor, Los Angeles, CA 90012, Defendants NewBridge Resources Group ("NewBridge"), Pacific Coast Energy Company LP ("PCEC") and John Crespo ("Crespo," and collectively with NewBridge and PCEC, the "Served Defendants") will, and hereby do, move the Court under Federal Rule of Civil Procedure 11 for an order sanctioning Plaintiff Scott Wood and his counsel, the Law Offices of Fauver, Large, Archbald & Spray, LLP, by dismissing Mr. Wood's Second Amended Complaint ("SAC") in its entirety or, in the alternative, striking the Fifth Count and all allegations that Mr. Wood was unable to consult with counsel, ordering Mr. Wood and/or his attorneys in this action to pay Served Defendants' attorneys' fees and costs incurred relating to this motion, to the Served Defendants' first, second, and third motions to dismiss filed on December 7, 2020, January 18, 2021, and April 9, 2021 (Dkts. 10, 22, 39), to the subpoenas that Served Defendants have issued to Hanna and Morton LLP, Locke Lord LLP, Michael Arthur McConnell, Timothy Skillman, TenOaks Energy Advisors, LLC, UBS AG CH, and UBS Securities LLC (collectively, "Trade Secrets Subpoenas"), and to the expert Served Defendants retained to defend against the trade secrets claims, and ordering any additional sanctions the Court determines to be just and proper. This motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on October 1, 2021. This motion was served on Mr. Wood's counsel on September 21, 2021 in compliance with Fed. R. Civ. Pro 11.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Marc Greenwald, the accompanying exhibits filed concurrently herewith, all materials incorporated or relied upon in it, matters of which this Court may take judicial notice, and any and all other materials the

1  Court deems proper.

2

3  Dated: October 15, 2021

Respectfully submitted,

4  QUINN EMANUEL URQUHART & SULLIVAN LLP

5

By:  */s/ Marc Greenwald*

6  Bruce E. Van Dalsem (Bar No. 124128)

7  brucevandalsem@quinnemanuel.com

8  865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

9  Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

10

Marc Greenwald (Bar No. 176072)

11  marcgreenwald@quinnemanuel.com

12  51 Madison Avenue, 22nd Floor
New York, New York 10010

13  Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

14

15  *Attorneys for Defendants Newbridge*

16  *Resources Group, LLC, Pacific Coast*
*Energy Company LP & John Crespo*

17

18

19

20

21

22

23

24

25

26

27

28

SERVED DEFENDANTS' RULE 11 MOTION FOR SANCTIONS

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL BACKGROUND.................................................................. 2

    A.   Mr. Wood And Counsel Alleged That Mr. Wood Was Not Represented By Independent Counsel ...................................... 2

    B.   Mr. Wood's Counsel Disregarded The Served Defendants' Warnings That This Allegation Was Not True And Repeated It........... 4

    C.   The Locke Lord Subpoena........................................................ 5

    D.   The Locke Lord Production Confirms That The Allegation That Mr. Wood Was Not Represented By Independent Counsel Is False .................................................................................... 6

    E.   Served Defendants' Compliance With Rule 11's Safe Harbor Provision ............................................................................. 8

LEGAL STANDARD ........................................................................ 8

ARGUMENT.................................................................................. 11

I.    THE SAC AND THE DISCOVERY RESPONSES VIOLATE RULE 11 BY MAKING FALSE REPRESENTATIONS CONCERNING MR. WOOD'S ABILITY TO CONSULT WITH COUNSEL ..................... 11

    A.   Mr. Wood And Mr. Large Falsely Stated That Mr. Wood Was Not Represented By Counsel During Negotiation Of The EA ............ 11

    B.   Mr. Wood's Counsel Failed To Conduct A Reasonable Or Competent Inquiry Into Locke Lord's Representation Of Mr. Wood ......................................................................... 12

    C.   Mr. Wood And Mr. Large Acted In Bad Faith ...................... 14

II.   MR. WOOD AND MR. LARGE SHOULD BE SUBJECT TO CASE-TERMINATING SANCTIONS AND MUST PAY THE SERVED DEFENDANTS' ATTORNEYS' FEES ........................................ 15

    A.   Dismissal Is Necessary To Deter Mr. Wood From Future Abuse Of The Litigation Process ................................................. 15

    B.   At The Least, The Trade Secrets Claim And The Allegation That Mr. Wood Was Unable To Obtain Legal Advice Should Be Struck From The SAC ........................................................ 17

    C.   Mr. Wood And His Counsel Must Pay The Served Defendants' Attorneys' Fees For This Motion, The Three Motions To Dismiss, And The Trade Secrets Subpoenas And Expert.................... 19

CONCLUSION................................................................................ 20

# **TABLE OF AUTHORITIES**

## **Cases**

*Albright v. Holden,*
   99 F.3d 1145, 1996 WL 593172 (9th Cir. 1996) ...............................9, 17

*Anheuser-Busch, Inc. v. Natural Beverage Distributors,*
   69 F.3d 337 (9th Cir. 1995) ...............................................................10, 17

*Ass'n of Women with Disabilities Advocating Access v. Mouet,*
   2007 WL 173959 (S.D. Cal. Jan. 11, 2007) .........................................17

*Boron v. W. Texas Exports, Inc.,*
   680 F. Supp. 1532 (S.D. Fla. 1988), *aff'd,* 869 F.2d 1500 (11th Cir. 1989) ....17,18

*Brown v. Royal Power Mgmt., Inc.,*
   2012 WL 298315 (N.D. Cal. Feb. 1, 2012) ..........................................19

*Christian v. Mattel, Inc.,*
   286 F.3d 1118 (9th Cir. 2002) ...............................................8, 9, 11, 12

*Combs v. Rockwell Int'l Corp.,*
   927 F.2d 486 (9th Cir. 1991) ............................................................10, 15

*Ferrantino v. San Juan Unified Sch. Dist.,*
   2020 WL 5633004 (E.D. Cal. Sept. 21, 2020) ....................................14

*Golden Eagle Distrib. Corp. v. Burroughs Corp.,*
   801 F.2d 1531 (9th Cir. 1986) .............................................................9

*Holgate v. Baldwin,*
   425 F.3d 671 (9th Cir. 2005) ..............................................................9

*Hunt v. Sunny Delight Beverages Co.,*
   2018 WL 6786265 (C.D. Cal. Dec. 18, 2018) ..................................10, 16

*Hutchinson v. Hensley Flying Serv., Inc.,*
   210 F.3d 383, 2000 WL 11432 (9th Cir. 2000) ..................................10

*Islamic Shura Council of S. Cal. v. Fed. Bureau of Investigation,*
   757 F.3d 870 (9th Cir. 2014) ...........................................................8, 9, 11

*Ivanova v. Columbia Pictures Indus., Inc.,*
   217 F.R.D. 501 (C.D. Cal. 2003) ......................................................10, 17

*JAT Wheels Inc. v. JNC Wheel Collection,*
   2014 WL 4568323 (C.D. Cal. Sept. 8, 2014)....................................6, 12

*Johnson v. International Business Machines Corp.,*
   891 F. Supp. 511 (N.D. Cal. 1995) ...................................................18

*Laparade v. Ivanova,*
   116 F. App'x 100 (9th Cir. 2004) .....................................................10

*Lloyd v. Schlag,*
   884 F.2d 409 (9th Cir. 1989) ............................................................................ 9

*Moser v. Bret Harte Union High Sch. Dist.,*
   366 F. Supp. 2d 944 (E.D. Cal. 2005) .............................................................. 9

*PAE Gov't Servs., Inc. v. MPRI, Inc.,*
   514 F.3d 856 (9th Cir. 2007) ........................................................................... 14

*Rattagan v. Uber Techs., Inc.,*
   2019 WL 3891714 (N.D. Cal. Aug. 19, 2019) ........................................ 10, 17, 19

*Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.,*
   893 F.2d 1109 (9th Cir. 1990) .......................................................................... 9

*Ruby Glen, LLC v. Internet Corp.,*
   2016 WL 6966329 (C.D. Cal. Nov. 28, 2016), *aff'd,* 740 F. App'x 118
   (9th Cir. 2018) ................................................................................................. 18

*United States v. Shaffer Equip. Co.,*
   11 F.3d 450 (4th Cir. 1993) ............................................................................. 10

*Truesdell v. S. Cal. Permanente Med. Grp.,*
   209 F.R.D. 169 (C.D. Cal. 2002) .................................................................... 10

*Truesdell v. S. California Permanente Med. Grp.,*
   293 F.3d 1146 (9th Cir. 2002) ............................................................... 9, 14, 15

## Rules / Statutes

Fed. R. Civ. P. 11 ................................................................................................ 10, 15

Fed. R. Civ. P. 11(b) ............................................................................................... 1, 8

Fed. R. Civ. P. 11(c) ............................................................................................. 13, 19

Fed. R. Civ. P. 11(c)(2) ........................................................................................... 8, 10

Fed. R. Civ. P. 11(c)(4) ............................................................................................... 11

## Other Authorities

5A Charles Alan Wright et al, Fed. Prac. & Proc. Civ. (4th ed. Apr. 2021
   update) ............................................................................................................ 6, 11

V. A. Phillips & K. L. Stevenson, *Fed. Civ. Proc. Before Trial* (Apr. 2021
   update) ............................................................................................................... 10

1

**PRELIMINARY STATEMENT**

2     Plaintiff Scott Wood and his counsel, Trevor D. Large, have represented five

3  times in pleadings and discovery responses that Mr. Wood "did not have independent

4  counsel representing him on the negotiation of" the Employment Agreement that is the

5  subject of this Action.  Second Amended Complaint ("SAC"), Dkt. 36 ¶ 20.  As the

6  Served Defendants stated in their first and second motions to dismiss, that is not true.

7  The Employment Agreement itself states, in bold and all-capital type and in a section

8  titled "Executive's Representations," that "**THE EXECUTIVE [MR. WOOD]**

9  **HEREBY ACKNOWLEDGES AND REPRESENTS THAT THE EXECUTIVE**

10 **HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING**

11 **THE EXECUTIVE'S RIGHTS AND OBLIGATIONS UNDER THIS**

12 **AGREEMENT**."  Employment Agreement ("EA"), Dkt. 36-1 at § 11(e).   The

13 Operating Agreement likewise provides that "[Mr. Wood] has retained [Locke Lord] as

14 legal counsel to [Mr. Wood] … in the preparation of [the Operating Agreement] or any

15 documents related hereto," *i.e.*, the Employment Agreement.  Operating Agreement

16 ("OA"), Ex. 1 to Dkt. 23 at § 14.16 & Appendix A (definitions of "LL" and "SW").

17     Served Defendants' counsel notified Mr. Large on April 2, 2021 that Mr. Wood's

18 representation to this Court that he "did not have independent counsel representing him

19 on the negotiation of" the Employment Agreement was false.  *See* Fed. R. Civ. P. 11(b).

20 Mr. Large refused to withdraw the false allegation.  Indeed, he subsequently repeated it

21 in responses to Served Defendants' Requests for Admissions and Interrogatories.

22 Rather than burden the Court with this motion prematurely, Served Defendants

23 subpoenaed Locke Lord.  Locke Lord's production confirms what the Employment

24 Agreement states and Served Defendants have repeatedly told Mr. Large:  that the

25 allegation that Mr. Wood was not represented by independent counsel is not true.  In

26 fact, the documents produced by Locke Lord show that in June 2020, Mr. Wood's then-

27 counsel told Locke Lord at Mr. Wood's request and in an email that Mr. Wood was

28 copied on that Locke Lord had represented Mr. Wood in the negotiation of the

Employment Agreement—referencing the very provision of the Operating Agreement that records this fact and to which the Served Defendants have repeatedly drawn to Mr. Large's attention.  A reasonable inquiry would therefore have demonstrated that Mr. Wood's factual contentions lacked evidentiary support, and thus, this Court should impose sanctions.

This Court should dismiss Mr. Wood's Second Amended Complaint in its entirety.  In the alternative, Served Defendants request that this Court strike all allegations that Wood was unable to consult with counsel and strike the Fifth Count for trade secret misappropriation, which rests on those allegations.  In addition, Served Defendants further request that this Court direct Mr. Wood and Mr. Large to pay Served Defendants' attorneys' fees and costs incurred relating to this motion; to Served Defendants' first, second, and third motions to dismiss, filed on December 7, 2020, January 18, 2021, and April 9, 2021 (Dkts. 10, 22, 39); and to the Trade Secrets Subpoenas and the expert that Served Defendants issued and retained, respectively, to defend against the Fifth Count.  The Served Defendants and this Court should not be required to expend judicial and private resources to litigate allegations that are patently false, and Mr. Wood and Mr. Large must be sanctioned to deter them from repeatedly advancing false allegations on pivotal issues in this Action.

## **FACTUAL BACKGROUND**

### A.  **Mr. Wood And Counsel Alleged That Mr. Wood Was Not Represented By Independent Counsel**

In every operative complaint filed in this Action, Mr. Wood and Mr. Large have alleged that Mr. Wood was not represented by independent counsel in the negotiation of the Employment Agreement. They made these allegations despite acknowledging that the parties negotiated the Agreement at the offices of Locke Lord, the law firm the documents themselves identified as Mr. Wood's counsel.  The initial Complaint, the First Amended Complaint ("FAC"), and the SAC each alleged that Mr. Wood "did not have an opportunity for independent counsel to review or evaluate the" agreements

when they were presented to him, that he "did not have independent counsel representing him on the negotiation of" these documents, and that he was "forced to sign" the documents. SAC ¶¶ 19-20; *see* Complaint, Dkt. 1-1 ¶¶ 18-19 (same); FAC, Dkt. 14 ¶¶ 19-20 (same). The SAC added a new allegation—that the meeting at which Mr. Wood "did not have an opportunity for independent counsel to review or evaluate the documents" took place ***at Locke Lord***. Specifically, the SAC alleges that "at the end of August 2019, Defendants Hasbo and Crespo presented corporate documents and [the Employment Agreement] to Wood at an in-person meeting at the office of Law Firm Locke, Lord, LLP, in Houston, TX." SAC ¶ 19. Indeed, the SAC specifically alleged that Mr. Wood "was forced to sign" the EA and related corporate documents at a meeting in Locke Lord's offices (the "Locke Lord Meeting") and that he "did not have the ability to consult with independent counsel at [that] time." *Id.* ¶ 20.

The very documents attached to or incorporated by reference into the SAC demonstrated that the allegation that Mr. Wood was not represented by independent counsel was not true. Locke Lord represented Mr. Wood in connection with the negotiation of the Operating and Employment Agreements. Section 14.16 of the Operating Agreement, signed by Mr. Wood, states that "[Mr. Wood] has retained [Locke Lord] as legal counsel to [Mr. Wood] … in the preparation of [the Operating Agreement] or any documents related hereto," namely the Employment Agreement. OA § 14.16 & Appendix A (definitions of "LL" and "SW"). The Employment Agreement, also signed by Mr. Wood, likewise states that Mr. Wood "consulted with independent legal counsel." EA § 11(e). It is baseless to suggest that Mr. Wood was somehow unable to or prevented from consulting with counsel at the August 2019 meeting when that meeting took place at the offices of Mr. Wood's own attorneys and Mr. Wood had an attorney representing him in the room during the meeting.

### B. Mr. Wood's Counsel Disregarded The Served Defendants' Warnings That This Allegation Was Not True And Repeated It

The Served Defendants repeatedly warned Mr. Wood's counsel, Trevor Large, that the allegation that Mr. Wood was not represented by independent counsel in the negotiation of the Employment Agreement was not true. In their December 7, 2020 and January 18, 2021 motions to dismiss, the Served Defendants twice cited to the very provisions of the Operating and Employment Agreements—sections 14.16, and 11(e), respectively—that state that Mr. Wood was represented by Locke Lord in connection with the negotiation of the Operating and Employment Agreements. *See* Dkt. 10 at 22-23 ("The Employment Agreement expressly states that Wood had counsel … (EA § 11(e); *see also* OA § 14.16 (noting that Wood had assistance of counsel for the Operating Agreement 'or any documents related hereto')"); Dkt. 22 at 22 (same). The Served Defendants warned Mr. Large a third time after Mr. Wood alleged in the SAC that the meeting at which Mr. Wood "did not have an opportunity for independent counsel to review or evaluate the documents" took place ***at the offices of his counsel***. SAC ¶ 19. On April 2, 2021, shortly after Mr. Large filed the SAC, the Served Defendants' attorneys met and conferred with Mr. Large and again noted that the allegation that Wood was not represented by independent counsel was not true and that Served Defendants were contemplating bringing a Rule 11 motion. Ex. 1 (2021.04.05 Greenwald Email to Large).[1]

Instead of withdrawing the allegation, Mr. Large repeated it. Following the meet and confer, Mr. Large refused to withdraw the allegation and represented to Served Defendants that the allegation was "entirely consistent with the facts." Ex. 1 (2021.04.06 Large Email to Greenwald). Mr. Wood then twice repeated the allegation in his verified responses to Served Defendants' Requests for Admission and

---

[1]   Unless otherwise noted, all Exhibits cited herein are attached to the Declaration of Marc Greenwald, submitted with this Motion.

Interrogatories (collectively, "Discovery Responses"), served on the Served Defendants by Mr. Large. *See* Ex. 2 (2021.07.28 Wood's Response to Defendants' Requests for Admissions, Set One) at 6-7 ("Deny[ing]" that Locke Lord attorneys represented him); Ex. 3 (2021.07.28 Wood's Response to Defendants' Interrogatories, Set One) at 5 ("Mr. Wood did not have his own counsel representing him in th[e] discussions" concerning the Employment Agreement).

### C.     The Locke Lord Subpoena

Rather than burden the Court with a Rule 11 motion prematurely, the Served Defendants sought discovery into Mr. Wood's relationship with Locke Lord.  On July 9, 2021, the Served Defendants issued a subpoena to Locke Lord.  Ex. 4 (2021.07.09 Subpoena to Locke Lord).  Locke Lord objected on the basis of privilege, Ex. 5 (2021.07.23 Locke Lord R&Os), and contacted Mr. Large to confirm whether Mr. Wood intended to assert privilege.  Mr. Large apparently retreated from the allegations in the SAC that Mr. Wood did not have independent counsel and represented to Locke Lord that it was "possible that the attorney client relationship [between Mr. Wood and Locke Lord] existed."  Ex. 6 (Large 2021.08.13 Email to Montminy).  Locke Lord provided its entire production set to Mr. Large on August 19, 2021, Ex. 7 (2021.08.19 Montminy Ltr to Large), Mr. Large reviewed that set, and Locke Lord subsequently withheld hundreds of documents from its September 3, 2021 production "pursuant to Mr. Woods' [sic] assertion of privilege through his counsel."  Ex. 8 (2021.09.03 Montminy Email to Greenwald & attached Privilege Log).  Only after the Served Defendants announced their intention to move to compel did Mr. Large withdraw the assertion of privilege and Locke Lord produced the entire set.  Exs. 9 (2021.09.07 Greenwald Ltr to Montminy & Large); 10 (2021.09.09 Large Email to Greenwald).

### D.     The Locke Lord Production Confirms That The Allegation That Mr. Wood Was Not Represented By Independent Counsel Is False

The Locke Lord production confirms what the governing agreements state and the Served Defendants repeatedly advised Mr. Large:  that Locke Lord represented Mr. Wood in connection with the negotiation of the Employment Agreement.  Indeed, Mr. Wood's former counsel told Locke Lord so at Mr. Wood's request, after conferring with Mr. Wood, and in an email that Mr. Wood was copied on.  On June 11, 2020, Wood's then-counsel, John M. Zukowski, wrote to Locke Lord at Mr. Wood's request and after conferring with Mr. Wood to "call [Locke Lord's] attention to Paragraph 14.16 of [the Operating] Agreement." Ex. 11 (WOOD_NEWBRIDGE_LL_004518). Notably, Section 14.16 of the Operating Agreement is the *same* section that the Served Defendants repeatedly called to Mr. Large's attention.  Mr. Zukowski then stated that "[a]s I read that Paragraph, *Locke Lord was engaged to protect and represent Mr. Wood's interests* related to the Operating Agreement or any related documents in any matter between Mr. Wood and Newbridge," and that "[t]he Employment Agreement is such a related Agreement." *Id* (emphasis added).  And because Locke Lord represented Mr. Wood, Mr. Zukowski asserted that Locke Lord was "obligated to … assist[]" Mr. Wood in a dispute with NewBridge concerning the Employment Agreement and could only represent NewBridge if it obtained a waiver from Mr. Wood.  *Id*.

The documents show that Mr. Wood and Mr. Zukowski were right—Locke Lord *did* represent Mr. Wood in connection with the negotiation of the Employment Agreement.  Mr. Wood asked Locke Lord to represent him in the negotiation of the Employment Agreement.  Ex. 12 (WOOD_NEWBRIDGE_LL_007673) ("[I] need an employment agreement.").  Locke Lord told Mr. Wood they were "happy" to do so. *Id*. Locke Lord referred to Mr. Wood as their client in both emails between Locke Lord attorneys and Mr. Wood and in emails with Defendant Crespo, without any objection from Mr. Wood.  *See* Exs. 13 (WOOD_NEWBRIDGE_LL_000110) (Locke Lord attorney told another attorney "to turn pages with Scott (the client)"); 14

(WOOD_NEWBRIDGE_LL_008249) (Locke Lord attorney corresponding with Defendant Crespo referred to Mr. Wood as "our client").  And when Defendant Crespo circulated a draft of the Employment Agreement, Locke Lord assigned Mr. Wood an employment partner to review it.  Ex. 15 (WOOD_NEWBRIDGE_LL_004534).

In short, Locke Lord advised and consulted with Mr. Wood, Mr. Wood told Locke Lord what he wanted, and Locke Lord delivered.  Mr. Wood told Locke Lord that he wanted to obtain "minimum a year severance," Ex. 15 (WOOD_NEWBRIDGE_LL_004534), to strike the arbitration clause in Defendant Crespo's draft, Ex. 16 (WOOD_NEWBRIDGE_LL_004552), and to be guaranteed numerous benefits, including "insurance, membership, vehicle, travel, meals, [and a] Corporate plan on top" of his salary, Ex. 17 (WOOD_NEWBRIDGE_LL_000659). Locke Lord sent Defendant Crespo a redlined draft that included all those items and more.  Exs. 18-20 (WOOD_NEWBRIDGE_LL_002017, -2018, -2037).  The redline was so "bloody," Ex. 33 (WOOD_NEWBRIDGE_LL_004569), that Locke Lord told Mr. Wood that it would take Defendant Crespo and non-party K-4 significant time to review it.  Ex. 21 (WOOD_NEWBRIDGE_LL_002180).  And the final Employment Agreement guaranteed Mr. Wood the one-year of severance and various benefits on top of salary that he sought, with no arbitration clause. *See* EA §§ 5(b) (health insurance), 5(c) (vehicle allowance), 5(e) (club memberships), 5(f) (reimbursement of business expenses), 8 (one-year severance).  The production confirms what this Court has already determined—Mr. Wood is a "sophisticat[ed]" actor who was not "in an unequal bargaining position with Defendants." 2021.05.18 Order Granting Defendants' Motion to Dismiss, Dkt. 52 at 12.  Mr. Wood asked Locke Lord to represent him, Locke Lord did so, and Locke Lord delivered much of what Wood wanted.

Mr. Wood's own words and actions, and those of his prior counsel, confirm that Locke Lord represented him.  Locke Lord's production does not contain any suggestion by Mr. Wood that Locke Lord did not represent him in connection with the Employment Agreement.  In fact, Mr. Wood continued to seek advice from Locke Lord

about his rights under the Employment and Operating Agreements while he was CEO of NewBridge. *See* Exs. 22 (WOOD_NEWBRIDGE_LL_002910) (Mr. Wood requested and received advice on tax treatment of income under the Employment Agreement); 23 (WOOD_NEWBRIDGE_LL_002911) (Mr. Wood requested and received advice about Mr. Wood's rights under the Operating Agreement). And following his June 6, 2020 termination by NewBridge, Mr. Wood twice called Freddy Feldman, the Locke Lord attorney who had represented him in the negotiation of the Employment Agreement, and asked Locke Lord to represent him adverse to NewBridge. *See* Exs. 24 (WOOD_NEWBRIDGE_LL_004517); 25 (WOOD_NEWBRIDGE_LL_004528).

### E. Served Defendants' Compliance With Rule 11's Safe Harbor Provision

Rule 11 provides that any motion for sanctions must be served on the offending party at least 21 days before the motion is filed with the court. Fed. R. Civ. P. 11(c)(2); *Islamic Shura Council of S. Cal. v. Fed. Bureau of Investigation*, 757 F.3d 870, 872-73 (9th Cir. 2014). The Served Defendants served a copy of this motion on Mr. Wood's counsel, Trevor Large, on September 21, 2021, 21 days before the motion was filed with the Court. The parties have met and conferred, but Mr. Wood has not agreed to amend the SAC to withdraw the baseless factual allegations, necessitating this motion.

### <u>LEGAL STANDARD</u>

"Filing a complaint in federal court is no trifling undertaking." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). For that reason, Rule 11 requires that an attorney presenting any "pleading, written motion, or other paper" certify that he or she has performed "an inquiry reasonable under the circumstances" into both the facts and the law and that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1)-(4). Under Rule 11(b), "[a]n attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact." *Christian*, 286 F.3d at 1127. The Ninth Circuit has explained that "Rule 11 is intended to deter

baseless filings in district court and imposes a duty of 'reasonable inquiry' so that anything filed with the court is well grounded in fact, … and not interposed for any improper purpose." *Islamic Shura Council*, 757 F.3d at 872 (citation omitted). Although Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual … theories," *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir. 1990) (quotation omitted), it is intended to "discourage[] wasteful, costly litigation battles by mandating the imposition of sanctions when a lawyer's position, after reasonable inquiry, will not support a reasonable belief that there is a sound basis … in fact for the position taken." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127 (9th Cir. 2002) (citation omitted); *see also Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

A complaint is factually baseless where it contains false or misleading allegations. *See Truesdell v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002) ("Plaintiff's complaint was sanctionable because it was … factually misleading."); *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 953 (E.D. Cal. 2005) ("[M]isstatement and mischaracterization of facts … [and] consistent[] present[ation] of untruths and half-truths … are sanctionable."). If a complaint is factually baseless, courts will assess whether the signing attorney conducted an inquiry that was "objective[ly] reasonable[] under the circumstances" before filing it. *Lloyd v. Schlag*, 884 F.2d 409, 412 (9th Cir. 1989) (quotation omitted).

Under Rule 11, a "dismissal sanction [is] warranted when deliberate deception undermines integrity of judicial proceedings and threatens to interfere with rightful decision of [the] case." *Albright v. Holden*, 99 F.3d 1145 (Table), 1996 WL 593172, at

*1 (9th Cir. 1996) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)); *see also* V. A. Phillips & K. L. Stevenson, Fed. Civ. Proc. Before Trial (Apr. 2021 update) ¶ 17:469 (dismissal is an available Rule 11 sanction where "a party *deceives* a court") (emphasis in original) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)).  For this reason, courts have repeatedly imposed dismissal as a Rule 11 sanction when a plaintiff engaged in deception.  *See Hutchinson v. Hensley Flying Serv., Inc.,* 210 F.3d 383 (Table), 2000 WL 11432, at *1 (9th Cir. 2000) ("Using a falsified document in evidence is sufficient grounds for a dismissal sanction under Rule 11."); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate sanction … [under] Fed. R. Civ. P. 11 … to redress … mendacity."); *see also Hunt v. Sunny Delight Beverages Co.*, 2018 WL 6786265, at *4 (C.D. Cal. Dec. 18, 2018) ("Striking the entire First Amended Complaint [under Rule 11] is appropriate because Plaintiffs' sanctionable misrepresentations taint the entire pleading."); *Rattagan v. Uber Techs., Inc.*, 2019 WL 3891714, at *4 (N.D. Cal. Aug. 19, 2019) ("Because false factual premises underpin the FAC as it is currently framed, the Court DISMISSES the FAC in its entirety.").

Additionally, the Court may strike false or misleading allegations and claims that are necessarily dependent on those allegations from the Complaint as a Rule 11 sanction.  *See*, *e.g.*, *Ivanova v. Columbia Pictures Indus., Inc.*, 217 F.R.D. 501, 512 (C.D. Cal. 2003) ("strik[ing] all alleged facts and references in [plaintiff's] Complaint which are contrary to known facts" under Rule 11), *aff'd sub nom. Laparade v. Ivanova*, 116 F. App'x 100 (9th Cir. 2004), *cert denied sub nom. Ivanova v. Columbia Pictures Indus., Inc.*, 545 U.S. 1115 (2005); *JAT Wheels Inc. v. JNC Wheel Collection*, 2014 WL 4568323, at *3 (C.D. Cal. Sept. 8, 2014) ("strik[ing] [several] counts … of the Complaint" as a sanction for a Rule 11 violation).

Rule 11 sanctions "may [also] be composed of … an award of reasonable attorneys' fees to the opposing party for those fees and other expenses incurred as a direct result of the violation," *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D.

169, 175 (C.D. Cal. 2002) (citing Fed. R. Civ. P. 11(c)(2)), provided the amount of such sanctions "is limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(4).

## ARGUMENT

**I.    THE SAC AND THE DISCOVERY RESPONSES VIOLATE RULE 11 BY MAKING FALSE REPRESENTATIONS CONCERNING MR. WOOD'S ABILITY TO CONSULT WITH COUNSEL**

### A.    Mr. Wood And Mr. Large Falsely Stated That Mr. Wood Was Not Represented By Counsel During Negotiation Of The EA

Mr. Wood's allegation that he "did not have an opportunity for independent counsel to review or evaluate the documents" at the Locke Lord Meeting—a meeting held at his own lawyers' office—is false and lacks any objective factual basis.  SAC ¶ 19.  Rule 11 requires that "anything filed with the court [be] well grounded in fact." *Islamic Shura Council*, 757 F.3d at 872 (quotation omitted).  The allegation that Mr. Wood lacked an opportunity to consult counsel at the Locke Lord Meeting not only fails to meet this standard, but is "factually … impossible" because *Mr. Wood's counsel was in the room*.  *See Christian*, 286 F.3d at 1128.

Mr. Wood's allegation that he "did not have independent counsel representing him on the negotiation of" the Employment Agreement, SAC ¶ 20, is likewise factually impossible.  The Operating Agreement provides that "[Locke Lord] has not been engaged to protect or represent the interest of any Member [of NewBridge] other than [Mr. Wood] vis à vis [NewBridge] or any other Member in the preparation of this Agreement or any documents related hereto."  OA § 14.16.  In June 2020, Mr. Wood's then-counsel Mr. Zukowski contacted Locke Lord at Mr. Wood's request after conferring with Mr. Wood, pointed Locke Lord to this very provision, and represented to Locke Lord that "Locke Lord was engaged to protect and represent Mr. Wood's interests related to … the Employment Agreement."  Ex. 11 (WOOD_NEWBRIDGE_LL_004518).  Locke Lord's document production likewise confirms that: (1) Mr. Wood asked Locke Lord to represent him in connection with the

Employment Agreement; (2) Locke Lord agreed to do so; (3) Locke Lord repeatedly referred to Mr. Wood as their client without objection from Wood; (4) Locke Lord consulted with Mr. Wood about Mr. Wood's preferred changes to the draft Employment Agreement; and (5) Locke Lord was successful in incorporating many of those changes into the final agreement. *See supra*, Statement of Facts, Section D. Not only that, but Mr. Wood continued to seek legal advice from Locke Lord after the Employment Agreement was executed, and even twice asked Locke Lord to represent him adverse to NewBridge. *See id.* There can be no question that Locke Lord represented Mr. Wood during the negotiation of the Employment Agreement and any statement otherwise is false.

### B. Mr. Wood's Counsel Failed To Conduct A Reasonable Or Competent Inquiry Into Locke Lord's Representation Of Mr. Wood

Mr. Wood's counsel in this action failed to make a reasonable inquiry into Wood's ability to consult with counsel at the Locke Lord Meeting before filing the SAC. *See Christian*, 286 F.3d at 1129. In their December 7, 2020 and January 18, 2021 motions to dismiss, the Served Defendants twice cited to the very provision of the Operating Agreement—section 14.16—that states that Mr. Wood was represented by Locke Lord in connection with the negotiation of the Operating and Employment Agreements. *See* Dkt. 10 at 23 ("OA § 14.16 (noting that Wood had assistance of counsel for the Operating Agreement 'or any documents related hereto')"); Dkt. 22 at 22 (same). On April 2, 2021, the Served Defendants' attorneys met and conferred with Mr. Large, Mr. Wood's counsel, to explain why the allegation was not true. Ex. 1 (2021.04.05 Greenwald Email to Large).

In June 2020, nearly a year before the meet-and-confer, Mr. Wood's then-counsel Mr. Zukowski conferred with Mr. Wood, "call[ed] [Locke Lord's] attention" to that same provision, and represented that "Locke Lord was engaged to protect and represent Mr. Wood's interests related to … the Employment Agreement." Ex. 11 (WOOD_NEWBRIDGE_LL_004518). Mr. Wood himself was therefore aware of his

representation by Locke Lord.  Indeed, Mr. Wood asked Mr. Zukowski to "call [Locke Lord's] attention to" the provision of the Operating Agreement recording that Locke Lord represented Mr. Wood in the negotiation of the Employment Agreement. *Id*. And Mr. Wood also presumably recalls that Locke Lord was representing him at the time of the negotiation of the Operating and Employment Agreements less than two years ago, especially since he apparently recalled that the meeting at which he was presented with the Employment Agreement and other corporate documents took place at Locke Lord's offices.  SAC ¶ 19.

Putting aside that Mr. Large could have spoken with Mr. Wood to learn the allegation was false, Mr. Large could have also easily confirmed with either Mr. Zukowski or Locke Lord that Locke Lord had represented Mr. Wood in the negotiation of the Employment Agreement.  Mr. Zukowski's prior representation of Mr. Wood was no mystery.  In fact, in correspondence and in filings in this case, both the Served Defendants' attorneys and Mr. Large cited correspondence between the Served Defendants and Mr. Zukowski.  *See* Dkt. 23 at 70-83 (correspondence between the Served Defendants and Mr. Zukowski); *id*. at 128-142 (2021.01.11 Sharma Ltr. to Large attaching letter from Mr. Zukowski); *id*. at 145 (2021.01.18 Large Email to Sharma referencing "comments from Mr. Zukowski").  Nor was Mr. Large unaware of Locke Lord's involvement—the Served Defendants repeatedly pointed Mr. Large to the provision of the Operating Agreement stating that Locke Lord represented Mr. Wood, *see* Dkt. 10 at 23; Dkt. 22 at 22, and the SAC alleged that the meeting at which the Employment Agreement was presented to Mr. Wood occurred at Locke Lord's Houston offices.  SAC ¶ 19.  Mr. Large could have contacted Locke Lord to determine the facts about their representation of Mr. Wood before filing the Complaint, the FAC, or the SAC.  Likewise, Mr. Large could have requested that Locke Lord provide him with Mr. Wood's communications with Locke Lord prior to filing any of the three complaints, as Locke Lord voluntarily provided those communications to Mr. Large to review for privilege on August 19, 2021 .  Ex. 7 (2021.08.19 Montminy Ltr to Large).

In short, Mr. Large "could have easily verified" that Locke Lord was representing Mr. Wood at the time and that Mr. Wood had the opportunity to obtain legal advice, but did not do so. *Ferrantino v. San Juan Unified Sch. Dist.*, 2020 WL 5633004, at *7 (E.D. Cal. Sept. 21, 2020). "[T]his failure implicates [Mr. Large's] duty to conduct a reasonable inquiry into the facts before composing and filing [the Complaint, FAC, and SAC]," *id.*, and is sanctionable.

### C.   Mr. Wood And Mr. Large Acted In Bad Faith

Precisely because it was so obvious that Locke Lord represented Mr. Wood, this Court should find that Mr. Wood and Mr. Large acted in bad faith by choosing to repeatedly allege that Mr. Wood "did not have an opportunity [to consult with] independent counsel" at the Locke Lord Meeting and "did not have independent counsel representing him on the negotiation of [the Employment and Operating Agreements]." SAC ¶¶ 19-20. "[F]alse factual assertions may be evidence of bad faith." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 n.3 (9th Cir. 2007). And the court can infer that "[t]he complaint stated allegations … that Plaintiff's counsel must have known were false" when "Plaintiff's counsel simply had to know that … evidence [supporting its allegations] could not exist." *Truesdell*, 293 F.3d at 1153-54.

Just as in *Truesdell*, here Mr. Wood and Mr. Large "simply had to know" that Locke Lord represented Mr. Wood. The Employment Agreement, which stated that Mr. Wood "consulted with independent legal counsel," EA § 11(e), "was attached to Plaintiff's complaint," just as in *Truesdell*. 293 F.3d at 1154. The Complaint and FAC pled claims for breaches of the Operating Agreement, *see* Compl. ¶ 34; FAC ¶ 41, and both such complaints and the SAC attached "Exhibit B of the NewBridge Operating Agreement" as an exhibit,  SAC ¶ 21, FAC ¶ 21, Compl. ¶ 20, demonstrating that Mr. Wood and Mr. Large must have been familiar with the Operating Agreement. Indeed, Mr. Wood himself filed a complaint in a Delaware lawsuit against NewBridge and certain of the individual defendants regarding alleged breaches of the Operating

Agreement, a complaint that described the provisions of the Operating Agreement in detail and that the Served Defendants referred to in their second motion to dismiss. Dkt. 24, Ex. A ¶¶ 6-13, cited in Dkt. 22 at 9.  That same Operating Agreement, of course, records that Locke Lord represented Mr. Wood.  Mr. Wood knew that, and so did his former counsel Mr. Zukowski.  *See* Ex. 11 (WOOD_NEWBRIDGE_LL_004518).  And, as discussed, *see  supra* Section I.B, at the time Mr. Wood and Mr. Large filed the SAC, Served Defendants had already filed two motions to dismiss that directed Mr. Wood and his counsel to the very provision of the Operating Agreement that stated that Locke Lord represented Mr. Wood—the same provision that Mr. Zukowski cited in the June 11, 2021 email that he sent to Locke Lord at Mr. Wood's request.  Indeed, Mr. Large has possessed the entire Locke Lord production since August 19, 2021, *see* Ex. 7, but still has not sought to withdraw the statements in the SAC that Mr. Wood was not represented by independent counsel. Just as in *Truesdell*, "[i]t was, at best, disingenuous to claim" that Mr. Wood was unable to consult counsel at a meeting held at his own law firm. *Truesdell*, 293 F.3d at 1154.  "[C]ounsel must have known [that these allegations] were false." *Id.* at 1153.

## II.   MR. WOOD AND MR. LARGE SHOULD BE SUBJECT TO CASE-TERMINATING SANCTIONS AND MUST PAY THE SERVED DEFENDANTS' ATTORNEYS' FEES

### A.   Dismissal Is Necessary To Deter Mr. Wood From Future Abuse Of The Litigation Process

Because of the Rule 11 violations described above, and because Mr. Wood and his counsel have refused to withdraw the meritless allegations within the 21-day "safe-harbor," the Court should dismiss the SAC in its entirety as a sanction.  "Dismissal is an appropriate sanction … [under] Fed.R.Civ.P. 11 … to redress … mendacity." *Combs*, 927 F.2d at 488.  Here, as explained above in Section I.C, the facts compel the inference that "[t]he complaint stated allegations … that [Mr. Wood and his] [c]ounsel must have known were false." *Truesdell*, 293 F.3d at 1153.  And "[i]f bad faith is found, … the district court has wide latitude to impose sanctions [under Rule 11],

including the striking of the offending pleading." *PAE Gov't Servs.*, 514 F.3d at 859 n.3.

Dismissal of the entire SAC is necessary here "because [Mr. Wood's] sanctionable misrepresentations taint the entire pleading." *Hunt*, 2018 WL 6786265, at *4. The key allegation in the SAC is that Defendants exerted "duress" and "pressure" to force Mr. Wood to "sign[] the NewBridge corporate documents as well as the EA." SAC ¶ 21. Indeed, Mr. Wood discusses his negotiations with Defendants prior to the formation of NewBridge and the alleged improper pressure that coerced him to sign the Employment and Operating Agreements at length in the Complaint. SAC ¶¶ 11-21. These allegations in turn ground several of Mr. Wood's claims, including the fraud, trade secrets, unfair competition, and breach of covenant of good faith and fair dealing claims.[2] See SAC ¶¶ 50 (fraud claim references "scheme to obtain [Mr. Wood's] intellectual property"), 57 (trade secrets claim based on "improper[] induce[ment] [of Mr. Wood] to enter into the EA"), 63 (unfair competition claim based on "forcing [Mr. Wood] to sign the EA under duress"), 69 (good faith claim based on Defendants' "coercive conduct"). And underpinning all of these claims of coercive conduct and improper inducement are the allegations that Mr. Wood "did not have the ability to consult with independent counsel at the time he was forced to sign [the Employment and Operating Agreements]." SAC ¶ 20.

Moreover, Mr. Large invoked these allegations in defending against the Served Defendants' motion to dismiss, citing the paragraphs of the FAC making these allegations. *See* Dkt. 28 at 16 (alleging "duress") (citing FAC ¶¶ 12-21). And the Court relied on those same paragraphs of the FAC to deny the Served Defendants' second motion to dismiss. *See* Dkt. 34 at 13 ("Plaintiff pleads numerous facts to support his duress claim") (citing FAC ¶¶ 18-21). Mr. Wood—and his counsel—have

---

[2]  This Court has already dismissed Mr. Wood's unfair competition and good faith claims without leave to amend. *See* Dkts. 52-53.

1  thus relied upon knowingly false facts to deceive the Court into declining to dismiss the

2  complaint in full.

3      Accordingly, dismissal of the entire SAC is necessary because including "pivotal

4  allegations in the complaint that are materially false and misleading and made without a

5  reasonable basis in fact" and relying on these allegations to survive a motion to dismiss

6  is not conduct that this Court may tolerate.  *Ass'n of Women with Disabilities*

7  *Advocating Access v. Mouet*, 2007 WL 173959, at *3 (S.D. Cal. Jan. 11, 2007).

8  Mr. Wood and Mr. Large's false allegations "threaten[] to interfere with rightful

9  decision of [the] case." *Albright*, 1996 WL 593172, at *1 (citing *Anheuser-Busch, Inc.*,

10  69 F.3d at 348).  Indeed, they have ***already*** impacted the outcome of the Served

11  Defendants' second motion to dismiss.  And "[b]ecause false factual premises underpin

12  the [SAC] as it is currently framed, the Court [should] dismiss[] the [SAC] in its

13  entirety." *Rattagan*, 2019 WL 3891714, at *5.

14      **B.    At The Least, The Trade Secrets Claim And The Allegation That
          Mr. Wood Was Unable To Obtain Legal Advice Should Be Struck
15          From The SAC**

16      However, if the Court determines that case-terminating sanctions are

17  inappropriate, this Court should strike both the false factual allegations and the

18  misappropriation of trade secrets claim that depends on those allegations.  *See*, *e.g.*,

19  *Ivanova*, 217 F.R.D. at 512 ("strik[ing] all alleged facts and references in [plaintiff's]

20  Complaint which are contrary to known facts" under Rule 11).

21      The allegation in Paragraphs 19-20 of the SAC that Mr. Wood was unable to

22  obtain independent legal advice, including at the Locke Lord Meeting, must be struck

23  because it is "contrary to known facts," namely that Locke Lord provided independent

24  legal representation to Wood in connection with the Operating and Employment

25  Agreements. *Ivanova*, 217 F.R.D. at 512.  This allegation should thus be "deemed …

26  waived," 5A Wright et al, Fed. Prac. & Proc. Civ. (4th ed., Apr. 2021 update) § 1336.3,

27  and the court should "resolve all disputes on [this] issue in favor of [Defendants]."

28

1  *Boron v. W. Texas Exports, Inc.*, 680 F. Supp. 1532, 1537 (S.D. Fla. 1988), *aff'd*, 869

2  F.2d 1500 (11th Cir. 1989).

3        Mr. Wood's trade secrets claim must similarly be struck because it rests on the

4  allegation that Wood was unable to obtain legal advice during the negotiation of the

5  Employment Agreement, and that Served Defendants' acquisition of Mr. Wood's

6  alleged trade secrets pursuant to that agreement is thus unenforceable.  Mr. Wood

7  accepts that NewBridge acquired the alleged trade secrets by contract upon its

8  formation. SAC ¶¶ 16-18.  Mr. Wood's repeated allegation that he lacked the ability to

9  consult with counsel at the Locke Lord Meeting is an important component of

10  Mr. Wood's argument to set that contractual acquisition aside by showing that "the

11  circumstances of entering into the EA [were] unconscionable and under duress."  SAC

12  ¶ 47.  Indeed, the ability to consult an attorney is a factor that tends to negate a finding

13  of duress or unconscionability under California law.  *Johnson v. Int'l Bus. Machines*

14  *Corp.*, 891 F. Supp. 522, 530 (N.D. Cal. 1995) (duress claim failed when employee

15  made decision "knowingly and freely after receiving advice of counsel"); *Ruby Glen,*

16  *LLC v. Internet Corp.*, 2016 WL 6966329, at *4 (C.D. Cal. Nov. 28, 2016), *aff'd* 740 F.

17  App'x 118 (9th Cir. 2018) ("whether the party's review of the proposed contract was

18  aided by an attorney" is relevant to procedural unconscionability) (quotation omitted).

19  Indeed, at Mr. Large's invitation, *see* Dkt. 28 at 16, this Court relied on the very portion

20  of the FAC containing the allegation that Mr. Wood was not represented by

21  independent counsel to reject the Served Defendants' argument that Mr. Wood did not

22  own the alleged trade secrets.  Dkt. 34 at 13 (citing FAC ¶¶ 18-21).  Once stripped of

23  the supporting allegation that Mr. Wood was unable to obtain legal advice, the duress

24  and unconscionability claims become "frivolous," and it is appropriate to "strike [the

25  trade secrets] count[]" that rests on these claims as a Rule 11 sanction.  *JAT Wheels*

26  *Inc.*, 2014 WL 4568323, at *3.

27

28

**C.    Mr. Wood And His Counsel Must Pay The Served Defendants' Attorneys' Fees For This Motion, The Three Motions To Dismiss, And The Trade Secrets Subpoenas And Expert**

Additionally, the Court should impose sanctions by requiring Wood and/or his counsel to pay the Served Defendants' attorneys' fees for this motion and the motions to dismiss filed on December 7, 2020, January 18, 2021, and April 9, 2021 (Dkts. 10, 22, 39).  Monetary sanctions are necessary here to "effective[ly] deter[]" Mr. Wood and his counsel from repeating this misconduct.  Fed. R. Civ. P. 11(c).  "Monetary sanctions may be assessed where 'Plaintiffs' counsel continued to make ... factual assertions even when confronted with evidence presented by Defendants that their assertions were wrong.'"  *Rattagan*, 2019 WL 3891714, at *4 (quoting *Brown v. Royal Power Mgmt., Inc.*, 2012 WL 298315, at *3 (N.D. Cal. Feb. 1, 2012)).  That is exactly what happened here.  Mr. Wood and Mr. Large "persisted in pressing [their] claims [that Mr. Wood lacked the opportunity to consult with counsel]" despite the fact that the Served Defendants "notified [Mr. Large] on three occasions prior to filing the motion for sanctions that [this] allegation[] lacked a factual basis."  *Id.* at *5.  Instead of withdrawing the allegation after the first two motions to dismiss, Mr. Wood and his counsel expanded the allegation in the SAC by claiming that Mr. Wood was unable to consult with independent counsel at a meeting held in his own counsel's offices.  *See* SAC ¶¶ 19-20.  Similarly, rather than withdraw the allegation after the Served Defendants' attorneys warned them on April 2, 2021 that it was not true, Mr. Large asserted that the allegation was "entirely consistent with the facts," Ex. 1 (2021.04.06 Large Email to Greenwald), and repeated it in response to the Served Defendants' discovery requests.  Exs. 2-3.  And even after receiving Locke Lord's production on August 19, 2021, *see* Ex. 7, Mr. Wood and Mr. Large still did not withdraw the allegation.  "As a result, the parties and the Court have had to suffer a needless round of motion work."  *Rattagan*, 2019 WL 3891714, at *5.

Additionally, defending against the allegation required the Served Defendants to issue subpoenas to numerous third parties to gather information concerning

Mr. Wood's trade secret misappropriation claim and retain an expert to defend against that claim. That claim is predicated on the untrue assertion that Mr. Wood "did not have independent counsel representing him on the negotiation of [the Employment and Operating Agreements]." SAC ¶ 20. Wood is seeking $30 million in damages for that claim—30 and 20 times more than the damages Wood is seeking for his severance and conversion claims, respectively. Ex. 26 (Wood Initial Disclosures at 7). Faced with significant financial exposure, the Served Defendants prudently issued subpoenas to Hanna and Morton LLP, Michael Arthur McConnell, Timothy Skillman, TenOaks Energy Advisors, LLC, UBS AG CH, and UBS Securities LLC (collectively with the 2021.07.09 Locke Lord Subpoena (Ex. 4), the "Trade Secrets Subpoenas"), to obtain information concerning HVI Cat Canyon, Inc., one of the opportunities that Mr. Wood has alleged is a trade secret. *See* SAC ¶¶ 16, 28; Exs. 27-31. Additionally, the Served Defendants issued a subpoena to Locke Lord to defend against Mr. Wood's duress and unconscionability claims that the trade secret misappropriation claim is based on. Ex. 4 (2021.07.09 Locke Lord Subpoena). Finally, as the Served Defendants informed Mr. Large on September 7, 2021, the Served Defendants retained an expert to defend against Mr. Wood's trade secret misappropriation claim. Ex. 32 (2021.09.07 Boutilier Email to Large). This costly third-party discovery and expert opinion would have been unnecessary if Mr. Wood and Mr. Large had withdrawn the untrue allegation that Mr. Wood was not represented by independent counsel.

## **CONCLUSION**

The Served Defendants respectfully request that the Court impose sanctions against Plaintiff Scott Wood and his counsel by dismissing Mr. Wood's Second Amended Complaint ("SAC") in its entirety or, in the alternative, striking the Fifth Count and all allegations that Mr. Wood was unable to consult with counsel. The Served Defendants further respectfully request that the Court impose further sanctions against Mr. Wood and his counsel by ordering them to pay the Served Defendants' attorneys' fees and costs incurred relating to this motion, to the Served Defendants'

first, second, and third motions to dismiss filed on December 7, 2020, January 18, 2021, and April 9, 2021 (Dkts. 10, 22, 39), and to the Trade Secrets Subpoenas and the expert that the Served Defendants issued and retained, respectively, to defend against the Fifth Count, and ordering any additional sanctions the Court determines to be just and proper.

Dated: October 15, 2021

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By:   _/s/ Marc Greenwald_____
Bruce E. Van Dalsem
Marc Greenwald

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Bruce E. Van Dalsem (Bar No. 124128)
brucevandalsem@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Marc Greenwald (Bar No. 176072)
marcgreenwald@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100

*Attorneys for Defendants NewBridge Resources Group, LLC, Pacific Coast Energy Company LP & John Crespo*

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this Action.  I am employed in the City of New York, State of New York.  My business address is 51 Madison Avenue, 22nd Floor, New York, NY 10010.

On October 15, 2021, I effected service of true copies of the following documents described as:

**SERVED DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

**DECLARATION OF MARC GREENWALD IN SUPPORT OF SERVED DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

**PROPOSED ORDER GRANTING SERVED DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address mishaboutilier@quinnemanuel.com to the persons at the e-mail addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Trevor D. Large (Bar No. 214886)          *Attorneys for Plaintiff Scott Wood*
TLarge@flasllp.com
Christopher M. de la Vega
    (Bar No. 276391)
cdelavega@flasllp.com
Fauver, Large, Archbald & Spray, LLP
820 State Street, 4th Floor
Santa Barbara, CA 93101

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 15, 2021, in New York, New York.

_Misha Boutilier_

_____
Misha Boutilier